The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost. The appealing party has not shown good ground to receive further evidence or to rehear the parties or their representatives. Upon reconsideration of the evidence the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner as follows:
*****************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in the Form 21 Agreement for Payment of Compensation as:
STIPULATIONS
1. That the Employer-Employee relationship existed between the Plaintiff-Employee and the Defendant-Employer in that the Plaintiff Employee was employed by the Defendant-Employer on September 10, 1990.
2. That on September 10, 1990 while Plaintiff-Employee was employed by the Defendant Employer, the parties were subject to and bound by the provisions of the Workers' Compensation Act, and the Defendant-Employer, Wilson Tree Company, was insured by National Union Fire Insurance Company (Alexsis).
3. That the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
4. That the parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
5. That on September 10, 1990, Plaintiff-Employee suffered an injury by accident within the course and scope of his employment when he was pulled under a chipper and suffered a severe fracture of the right femur head and dislocation of the right hip.
6. That the parties entered into a Form 21 Agreement which was approved by the Industrial Commission on November 8, 1990 pursuant to which the Plaintiff was paid compensation at the rate of $243.47 per week.
7. That the Defendant submitted a Form 24 application to Stop Payment on June 16, 1992 alleging that the Plaintiff failed to cooperate with rehabilitation efforts. This application was denied by the Commission on June 18, 1992.
8. That the Defendants filed a second Form 24 application dated March 2, 1993, which was approved by the Industrial Commission on March 22, 1993.
9. Prior to the Commission approval of the Form 24 application dated March 2, 1993, the Defendants requested a hearing (with a Form 33) on the issue of the Plaintiff's failure to cooperate with rehabilitation efforts. The Plaintiff filed a Form 33R response alleging full cooperation by the Plaintiff, said response was dated March 11, 1993. No hearing on this issue was scheduled by the Commission prior to the approval dated March 22, 1993.
10. That the Plaintiff did not further appeal from the approved Form 24, but Plaintiff later filed a Form 33 Request for a Hearing on June 17, 1994. The Defendant filed its Form 33R response on July 18, 1994.
*****************
The Full Commission adopts in part and modifies in part the findings of fact by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. The Plaintiff, James Inman, was born on September 3, 1958. At the time of his injury, the Plaintiff was 32 years of age and was married, with two minor children. At the time of the hearing the Plaintiff was 37 years of age. Plaintiff dropped out of school in the eighth grade and has received neither a high school diploma, GED, nor any other formal education or technical training.
2. The date of injury in this matter is September 10, 1990, at which time the Plaintiff was employed by Wilson Tree Company, Inc; a corporation which no longer exists. On the date of injury, the Plaintiff had been employed for approximately ten (10) months, and was working as a climber and tree-trimmer, climbing trees, using a chain saw, and trimming branches on trees. The Plaintiff's duties involved heavy physical exertion and both upper and lower body dexterity and strength.
3. At the time of his injuries, the Plaintiff's average weekly wage, including overtime and all allowances, was $365.20, making his compensation rate $243.47 per week.
4. The Plaintiff has never engaged in, nor been trained for, sedentary employment or any employment that did not involve heavy manual labor.
5. The Plaintiff cannot perform the work that he was previously employed to do for the Employer in this matter, and there is no position with the Employer (no longer in business) that is available for the Plaintiff to do.
6. In Plaintiff's testimony at the hearing of this matter, he stated that he requires daily assistance with dressing himself, bathing, and taking care of his personal needs. The Plaintiff testified that he cannot read or write, that he suffers constant pain in his hip and back, that he has difficulty walking and balancing, and that he cannot sit nor stand for extended lengths of time. The Plaintiff testified that he cannot perform housework or assist his family around the house with any manual tasks, and that the extent of his ability to perform labor is to ride a riding lawn mower for three to four minutes and to "piddle" with the lawnmower engines that he owns. The Plaintiff testified that he spends most of the average day watching TV and/or resting and the Plaintiff specifically testified that he fully cooperated with all of the vocational efforts to the best of his ability.
7. The Plaintiff testified that on January 18, 1993, he voluntarily attended Haywood Vocational Opportunities, at the carrier's request, to attempt to be evaluated and/or retrained to perform sedentary labor. The Plaintiff testified that after less than one-half day of work at Haywood Vocational Opportunities, he was in so much pain that he could not continue working and that he thereafter left, even though he was allowed to alternate between sitting and standing. The Plaintiff testified that he fully cooperated with all of the vocational efforts to the best of his physical ability.
8. The Plaintiff's testimony concerning his injury, course of treatment, cooperation with rehabilitation, current condition, and employability as set forth above, is fully credible.
9. On March 2, 1993, the Defendants filed a Form 24 application to terminate compensation based on the Plaintiff's failure to comply with rehabilitation efforts. The application was approved by the Industrial Commission on March 22, 1993.
10. Plaintiff was initially treated at the Highlands-Cashiers Hospital Emergency Room for injuries to his right hip and left knee, and was prescribed Demerol and Phenergan.
11. The Plaintiff was thereafter transferred to Angel Community Hospital Emergency Room in Franklin, North Carolina, where he was continued on Demerol and Valium. The Plaintiff was diagnosed as suffering from dislocation of the right hip (with possible fracture of the femoral head inferiorly) and laceration of the left knee. The Plaintiff was thereafter transferred to Haywood County Hospital in Clyde, North Carolina.
12. Upon admission to Haywood County Hospital, the Plaintiff was evaluated and x-rayed with a CT scan which indicated that a fragment of the right femur head was displaced.
13. On September 17, 1990 the Plaintiff was operated on by Dr. W.B. Owen, an orthopaedic surgeon, who performed an arthrotomy to the right hip, removal of fracture fragment to the right hip joint and posterior capsule repair. The Plaintiff was counseled on the risk of avascular necrosis to the hip joint and was discharged from the hospital on September 20, 1990 to convalesce.
14. On March 22, 1991 Dr. Owen stated in his record, with reference to the Plaintiff that, "He will have permanent disability."
15. On June 14, 1991, subsequent to performing an MRI, Dr. Owen diagnosed the Plaintiff as suffering from avascular necrosis and stated that, [T]he prognosis is that he would not resume the capability of climbing trees, and would not be able to resume his usual job. . . . I don't think he will ever be able to climb, do repeated squatting, crawling or bending frequently, and would be best suited to standing work, assembly line, walking and sitting alternately."
16. In August, 1991 Plaintiff was referred to Dr. Nathan Burkhardt at Blue Ridge Bone and Joint Clinic in Asheville, North Carolina, for a second opinion.
17. On January 9, 1992 the Plaintiff was evaluated by Dr. Stewart J. Harley of the Junaluska Orthopaedic and Sports Medicine Clinic in Clyde, North Carolina. Dr. Harley's diagnosis at that time was avascular necrosis right femoral head secondary to fracture dislocation while on the job in September, 1990. Dr. Harley opined that the Plaintiff should continue to see Dr. Owen every three to four months for close observation and x-rays and possible future surgical procedure.
18. The Plaintiff continued to be treated by Dr. Owen periodically until July 8, 1992 at which time Dr. Owen stated in his medical records, "If I were to give him an estimated disability rating today, I would say he has a functional loss of that leg of approximately eighty percent (80%) . . . he remains totally disabled temporarily. However, as noted above, I don't expect him to improve or to be able to resume full work on this leg."
19. On November 20, 1992, the Plaintiff was evaluated by Dr. Frank A. Haydon, who stated at that time, "I feel his partial permanent disability from avascular necrosis and intra-articular fracture of his hip with the severe degree of limitation would rate sixty percent (60%) impairment of the whole leg based on North Carolina Industrial Commission guidelines."
20. On March 19, 1993, Dr. Owen stated on his office note, "It continues to be my opinion that he remains incapable of full and unrestricted work. I think he has reached maximum improvement short of additional surgery. It is my opinion that he is one hundred percent (100%) permanently disabled due to loss of that leg with regard to function."
21. In his correspondence dated April 22, 1993, Dr. Owen stated that the Plaintiff had reached maximum medical improvement, that the Plaintiff was incapable of returning to his prior job, that he remains incapable of doing ordinary usual work for his past education and training, that he would probably need future surgery, and that plaintiff is one hundred percent (100%) disabled at present with regard to doing his previous work. Dr. Owens opined that plaintiff could do sedentary work if he were so trained and if he has surgery to his hip, he still would not be able to do full unrestricted work, but would remain incapable of doing physical work requiring constant squatting, bending, lifting, carrying or climbing.
22. On October 18, 1993, Dr. Owen, in his office note, states that with respect to the Plaintiff, "It is my estimate that he has reached maximum benefit of treatment and reached maximum improvement. I would not recommend surgery. He remains one hundred percent (100%) totally disabled due to loss of this leg. I think he could, in the future, need arthroplasty of this hip, but hopefully when he reaches sixties or seventies years of age. He has tried sedentary work and has been unable to perform these duties, therefore, he remains permanently one hundred percent (100%) disabled."
23. On June 9, 1993, the Plaintiff was referred to the Work Recovery Center in Hickory, North Carolina for a Functional Capacity Evaluation. At that time the Plaintiff was diagnosed as suffering from right hip avascular necrosis with chronic pain and mild limitation of range of motion. With respect to functional capacity, the records state that the Plaintiff did not complete the full Functional Capacity Evaluation due to complaints of severe right hip pain. The report states that Plaintiff's capabilities were measured at the sedentary level and that he had a permanent partial impairment to the right lower extremity of 37% based upon limited range of motion and avascular necrosis.
24. On January 7, 1994, Dr. Lawrence Webb at North Carolina Baptist Hospital, Inc., conducted an IME, reviewed x-rays of the plaintiff, evaluated him and concluded that plaintiff is incapable of returning to his prior work, but he may be capable of sedentary work with limitations.
25. On August 15, 1995, the Plaintiff was evaluated by Randy Lee Adams, M. Ed., CVE, CRC. Mr. Adams concluded that, based on his physical and academic limitations, the Plaintiff "would not be employable."
26. On August 18, 1995, a labor market survey was conducted by Comprehensive Rehabilitation Associates. Although the case manager indicated that there were employers in the area willing to hire someone with the plaintiff's limitations, no weight is given to this opinion because no available jobs were identified. Also there is no evidence that plaintiff could get either of the jobs that might become available.
27. Based upon the greater weight of the evidence plaintiff is incapable of earning wages in any employment taking into consideration his physical limitations, limited education, work history, consisting of heavy manual labor and lack of transferable vocational skills. Plaintiff's incapacity to earn wages is permanent.
28. The Form 24 Application to stop payment of benefits to plaintiff was improvidently approved.
*****************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On September 10, 1990 plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of employment and was paid workers' compensation benefits pursuant to a Form 21 Agreement from the date of injury through March 21, 1993. N.C.G.S. § 97-21 (6).
2. As a result of plaintiff's physical restrictions and pain resulting from his compensable injury, his limited education, his work history consisting of heavy manual labor, and lack of transferable vocational skills, plaintiff is permanently totally disabled and is entitled to continuing compensation at the rate of $243.49 per week beginning March 22, 1993 and continuing until further order of the Industrial Commission finding a change of condition. N.C.G.S. § 97-29; Whitley v. Columbia Lumber Mfg.Co., 318 N.C. 89 (1986); Russell v. Lowe's Products Distribution,108 N.C. App. 762 (1993).
2. Plaintiff is entitled to the reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services at defendants' expense for the remainder of plaintiff's life or until further Order of the Industrial Commission, whichever first occurs. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-2 (19).
*****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff compensation for total and permanent disability at the rate of $243.49 per week, beginning March 22, 1993 and continuing until further Order of the Industrial Commission, upon a change of condition. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. Defendants shall pay all reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services at defendants' expense for the remainder of plaintiff's life or until further Order of the Industrial Commission, whichever first occurs, when bills are submitted according to procedures approved by the Commission.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraphs 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay the costs.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ J. RANDOLPH WARD COMMISSIONER
BSB/cnp/rst 2/6/97