The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commission Hoag. As the appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant-employer is non-insured.
4. On 28 November 1994, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with the defendant.
5. The report of Dr. Benson Hecker, Ph.D. was hereby admitted into evidence and is made a part of the record in this case.
6. The medical records of Dr. Donald L. Mullis of Asheville Orthopedic Associates, containing a 25% impairment rating to plaintiff's arm, were stipulated into evidence.
 *************
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Plaintiff is a forty-five year old married male who resides in the Bee Log Community located in the northern section of Yancey County, North Carolina.
2. The Bee Log Community is located approximately twenty miles, and thirty minutes, from Burnsville, approximately forty miles, and a one hour drive from Spruce Pine, and forty miles and a one hour drive from Mars Hill. Plaintiff's home is located forty-five to sixty miles from the Asheville-Buncombe County area and thirty miles from the town of Erwin, Tennessee. There are various manufacturing plants such as Avondale, Outboard Marine Corporation and Glenn Raven Mills in Burnsville. Henderson Furniture Industries, Ethan Allen Furniture Industries, Lexington Furniture Industries and various mining enterprises are located in Spruce Pine.
3. Plaintiff attended school in Yancey County, North Carolina. He failed the fifth grade and had to repeat that grade because of lack of reading and math skills. In the ninth grade, plaintiff took remedial classes in reading and in math and still could not reach any proficiency in either of those areas. Plaintiff left school at the end of the ninth grade. Plaintiff has a learning disability which caused deficiencies in math skills and reading comprehension.
4. After leaving school, plaintiff worked with his father raising burley tobacco, which required large amounts of strength and extensive use of both arms and hands. He worked for one season after his eighteenth birthday picking fruit in Florida which also involved hard manual labor and required the use of both arms and hands.
5. Plaintiff next worked at Mohasco in Burnsville, North Carolina, as a dolfer for two to three years. This work required frequent lifting of heavy objects.
6. He was then employed by Penline Telephone Company at a job which required the pulling of telephone cable from rolls and assisting in placing telephone poles in the ground.
7. In the early 1970's plaintiff worked at Liberty Cash 
Carry in Burnsville, loading building supplies on trucks and taking supplies to construction sites.
8. In 1990 plaintiff went to work at Avondale Mills in Burnsville as a can pusher. This required extensive physical strength in both of his arms.
9. In 1992, plaintiff took a course at Cecil's Business College to obtain his commercial driver's license. An instructor took special notice of plaintiff's learning disability and read to him the regulations and assisted him in passing the commercial driver's license test.
10. Plaintiff next worked as a truck driver which required him to drive large tractor-trailers and to remove the cargo from the trucks, which required the use of both hands and arms and extensive lifting.
11. In 1993, plaintiff obtained employment with Heritage Paving as a truck driver. His duties consisted of operating heavy equipment and moving asphalt paving equipment. This job also required great strength and use of both arms and hands.
12. In December 1993, plaintiff obtained a job with defendant-employer, Finishes First, Inc. Plaintiff was paid by an employment staffing service known as Temporary Employment Staffing. Plaintiff's work consisted of unloading tractor-trailers containing either wooden or cardboard crates. The crates contained furniture or parts of furniture. After removing the crates, plaintiff assisted in cleaning the furniture and in preparing the furniture for finishing at defendant's factory. The job required extensive physical strength, and plaintiff had to use both arms and hands.
13. In May 1994, plaintiff became a regular employee at Finishes First, Inc. His rate of pay was $6.00 per hour. On 14 November 1994, plaintiff received a raise from $6.00 to $7.00 per hour.
14. On 28 November 1994, plaintiff and a co-worker were unloading a 2'x 2'x 8' crate which weighed approximately 300 pounds. The crate was being removed from a tractor-trailer. It was stacked on top of other crates and was above plaintiff's head. When plaintiff and his co-worker attempted to remove the crate, it began to fall. Plaintiff attempted to catch the crate using his right hand and arm. When plaintiff caught the crate, he experienced pain in his right biceps area. He immediately noticed that his biceps muscle was visibly bulging and that there appeared to be a sunken hole at the edge of his elbow and biceps. Plaintiff is right hand dominant.
15. Plaintiff immediately reported the injury to his co-worker, his supervisor, and the office manager.
16. Plaintiff presented to Dr. Susan Snider on 28 November 1994. Dr. Snider diagnosed plaintiff as having a ruptured biceps tendon. She prescribed conservative treatment and told plaintiff he would regain full use of his biceps muscle and tendon.
17. Plaintiff underwent physical therapy sessions at the direction of Dr. Snider during the month of December 1994 and into January 1995. He was able to regain some ability in his right arm, but experienced extreme weakness in his right arm and bicep.
18. Plaintiff was out of work and unable to earn wages of any kind from 28 November 1994 through 13 January 1995.
19. When he returned to work at defendant-employer, he found that he could not perform his former duties because of the weakness of his arm. Plaintiff attempted to compensate by using his left arm and shoulder to assist him in moving crates and boxes of furniture. In July 1995, the pain in the right arm became such that he could no longer perform the work. He resigned his job.
20. Plaintiff was then employed by Ledford Trucking Company from 29 July 1995 until 18 August 1995 as a truck driver. He had such weakness in his right arm that he could not safely operate a tractor-trailer truck. On 18 August 1995, plaintiff left the employ of Ledford Trucking Company.
21. On 2 October 1995, plaintiff obtained employment with Lexington Furniture Industries in Spruce Pine. This job required him to use a hammer and other tools to assemble items of furniture. Plaintiff found that he could not use a hammer with his right arm and hand and that he could not do the required heavy manual lifting. On 3 November 1995, plaintiff resigned, unable to perform the heavy manual labor that was required.
22. After leaving his job at Lexington Furniture Industries, plaintiff retained counsel and sought permission from defendant-employer to have further medical treatment so that his right arm and biceps could be repaired and so he could regain use of his arm. Defendant-employer failed to respond to communication from plaintiff's counsel. As a result, plaintiff filed a Form 33 requesting a hearing before the Industrial Commission.
23. On 2 May 1996, a hearing was held before Deputy Commissioner Margaret Morgan. Deputy Commissioner Morgan immediately ordered the defendant-employer pay for further treatment by Dr. Susan Snider and also by an orthopedic surgeon if deemed necessary by Dr. Snider.
24. Plaintiff was referred to Dr. Donald Mullis of Asheville Orthopedic Associates. He presented to Dr. Mullis on 8 May 1996. Dr. Mullis diagnosed plaintiff with a chronic tear of his biceps tendon and the muscle of his right arm. Dr. Mullis advised plaintiff that nothing could be done surgically to correct plaintiff's problems due to the fact that the muscle and tendon had been shortened for a year and a half. No surgery was recommended.
25. Dr. Mullis gave plaintiff a twenty-five percent (25%) permanent partial impairment rating to his right arm and told him he would not be able to perform any heavy labor.
26. Plaintiff next presented to Dr. Benson Hecker, PhD of Rehabilitation Associates in Greenville, South Carolina on 14 October 1996. Dr. Hecker examined plaintiff, reviewed his medical records, education, and employment history. Dr. Hecker also sought information from the Yancey County Employment Security Commission to determine whether or not there were any jobs available in Yancey County that would fit plaintiff's educational and physical limitations.
27. Plaintiff also went to the Yancey County Employment Security Commission to see if there was any work that he could perform.
28. Only one job was available within plaintiff's educational and physical limitations, a part-time security guard job located in Banner Elk, North Carolina, for twenty hours per week. This job would have required plaintiff to drive one and one-half to two hours to and from work.
29. On 16 October 1996, an Opinion and Award was entered by Deputy Commissioner Margaret Morgan ordering defendant-employer to pay temporary total disability compensation to plaintiff from the time of his injury, excluding the time he had been engaged in employment, until such time as plaintiff was released to return to work by his doctor or until further order of the Commission.
30. Deputy Commissioner Morgan further ordered that the compensation that had accrued to the date of the Order be paid in a lump sum. Defendant-employer was ordered to pay $2,500.00 to plaintiff's counsel as attorney's fees in addition to and not deducted from the amount due to plaintiff due to unfounded litigiousness pursuant to N.C. Gen. Stat. § 97-88.1.
31. Deputy Commissioner Morgan further ordered that defendant-employer pay a fine of $100.00 for failure to file a Form 33R.
32. The matter was reset for hearing on 21 October 1996 before Deputy Commissioner Hoag on the issue of whether or not plaintiff was entitled to permanent total disability benefits or, in the alternative, permanent partial disability benefits.
33. At the end of the hearing, Deputy Commissioner Hoag entered an Order containing the following findings:
 a. Plaintiff's average weekly wage pursuant to a Form 22, was $280.00 per week yielding a compensation rate of $186.68 per week.
 b. Defendant-employer was ordered to pay compensation to plaintiff at the rate of $186.68 per week for a period of sixty (60) weeks and the sum was to be paid within thirteen (13) days.
 c. Defendant-employer was further ordered to appoint a physician or some other appropriate person to perform a functional capacity examination of plaintiff within the next thirty (30) days of the entry of the Order.
 d. Defendant-employer was ordered to appoint a rehabilitation nurse to work with plaintiff in an effort to assist him in finding employment within the next thirty (30) days.
 e. Defendant-employer was further ordered to pay to plaintiff the sum of $186.68 per week as temporary total disability benefits pending further Order of the Commission.
34. Defendant-employer failed to comply with the orders of Deputy Commissioner Morgan and Deputy Commissioner Hoag. This failure demonstrates an egregious lack of response and a callous disregard for its employee.
35. Dr. Benson Hecker is an expert in rehabilitation and counseling. Dr. Hecker evaluated plaintiff and was of the opinion that there was not any work that plaintiff could perform. Due to plaintiff's age, lack of education and other circumstances including his present physical condition, Dr. Hecker does not believe plaintiff could perform any work and that it is futile for him to seek employment based upon the multiplicity of his limiting conditions.
36. According to Dr. Mullis, plaintiff suffered a ruptured right biceps tendon and ruptured right biceps muscle on 28 November 1994. This condition can not be corrected by any surgical procedure. According to Dr. Mullis, it would not be futile for plaintiff to try other types of employment, but seeking other types of employment would require that plaintiff undergo vocational rehabilitation and be retrained to perform a job that does not require heavy manual labor. Dr. Mullis is correct in his evaluation of plaintiff's inability to do manual labor. However, the Full Commission finds the 25% impairment rating to the arm is too low for a limb which is useless and further renders plaintiff functionally unemployable in the only work he has ever done.
37. Defendant-employer has failed and refused to provide any rehabilitation services whatsoever for plaintiff.
38. Plaintiff has been totally disabled since 6 November 1995 and remains totally disabled and unable to work or to earn wages of any kind to this date.
39. Defendant was ordered to pay plaintiff $186.68 per week from and after 21 October 1996 as temporary total disability payments pending further order of the Commission.
40. The Order was entered without prejudice to the right of plaintiff to contend and seek permanent total disability benefits as provided by N.C. Gen. Stat. § 97-29 or permanent partial disability benefits as provided by N.C. Gen. Stat. § 97-31.
 *************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage as determined by the Form 22 is $280.00, yielding a compensation rate of $186.68 per week. N.C. Gen. Stat. § 97-2(5).
2. Plaintiff is entitled to total and permanent disability benefits for the remainder of his life as provided by N.C. Gen. Stat. § 97-29. Whitley v. Columbia Lumber Mfg. Co., 318 N.C. 89,348 S.E.2d 336 (1986). N.C. Gen. Stat. § 97-29 is an alternative source of compensation for an employee who suffers an injury which is also listed in the schedule of injuries as set forth in N.C. Gen. Stat. § 97-31. An injured worker is allowed to select the more favorable remedy, but he cannot recover compensation under both sections. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982).
3. Plaintiff has proven by a preponderance of the competent, credible evidence of record that he is permanently and totally disabled. There is no work that plaintiff could perform which exists in open competition with others. Because of plaintiff's age, lack of education and other circumstances, and in his present physical condition, plaintiff is not able to perform any work. Moreover, it is futile for plaintiff to seek employment based upon these conditions. Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Plaintiff is entitled to an assessment of penalties against defendant pursuant to N.C. Gen. Stat. § 97-18 for failure to pay compensation as ordered.
5. Plaintiff is entitled to an assessment of attorney's fees against defendant pursuant to N.C. Gen. Stat. § 97-88.1 as ordered by Deputy Commissioner Hoag.
6. Plaintiff is entitled to recover a penalty from defendant in the amount of ten percent (10%) for each unpaid installment as assessed by Deputy Commissioner Hoag pursuant to N.C. Gen. Stat. § 97-18.
7. In addition to the attorney's fees awarded by Deputy Commissioner Morgan, plaintiff is entitled to fees in the amount of $35,000.00 as assessed by Deputy Commissioner Hoag pursuant to N.C. Gen. Stat. § 97-88.1.
 *************
Based upon the foregoing findings of fact and conclusions of law, Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff the sum of $186.68 per week from the date of his injury by accident until the date of the filing of this Opinion and Award. This amount has accrued and shall be paid in a lump sum.
2. Defendant shall henceforth pay plaintiff the amount of $186.68 per week for the remainder of his natural life.
3. Defendant shall pay directly to plaintiff's attorney the lump sum amount of $37,500.00 as attorney's fees.
4. Defendant shall pay all penalties as permitted to be assessed under N.C. Gen. Stat. § 97-18.
5. Defendant shall pay plaintiff 10% of the amount due under paragraph one herein, pursuant to N.C. Gen. Stat. § 97-18.
6. Defendant shall pay the costs.
 S/ _______________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
S/ _____________________ CHRISTOPHER SCOTT COMMISSIONER