BENJAMIN A. WHITLEY, EMPLOYEE v. COLUMBIA LUMBER MFG. CO., EM-PLOYER, AND INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, INSURER

No. 805PA85

(Filed 29 August 1986)

Master and Servant § 69— workers' compensation—employee totally and permanently disabled—statute governing benefits

> An employee who qualifies as being totally and permanently disabled is not precluded by the "in lieu of" clause of N.C.G.S. § 97-31 from recovering lifetime compensation under N.C.G.S. § 97-29 if all his injuries are listed in the schedule of § 31, and language of *Perry v. Furniture Co.*, 296 N.C. 88, to the effect that an employee whose injuries are included in the schedule set out in § 31 may be compensated *exclusively* under that section is overruled.

> Justice BILLINGS dissenting.

> Chief Justice BRANCH and Justice MEYER join in this dissenting opinion.

ON plaintiff's petition for further review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 78 N.C. App. 217, 336 S.E. 2d 642 (1985), reversing a workers' compensation award by the Industrial Commission.

*Charles M. Welling for plaintiff-appellant.*

*George C. Collie and James F. Wood, III for defendant-appellees.*

EXUM, Justice.

This is a workers' compensation case. Plaintiff, Benjamin A. Whitley, sustained injuries to his right arm and left hand while

Whitley v. Columbia Lumber Mfg. Co.

operating a bench saw in the employment of defendant Columbia Lumber Mfg. Co. The Industrial Commission concluded that plaintiff was totally and permanently disabled and entitled to compensation under N.C.G.S. § 97-29.[1] On appeal to the Court of Appeals defendants did not dispute that plaintiff was totally and permanently disabled as that term is used in section 29. They argued, however, the schedule of benefits codified at section 31 was plaintiff's exclusive remedy. The Court of Appeals, relying on *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978), agreed and reversed the Commission's award. The sole question presented by this appeal is whether an employee who suffers an injury scheduled in section 31 may recover compensation under section 29 instead of section 31 if he is totally and permanently disabled. We hold that he can and reverse the Court of Appeals.

I.

Evidence before the Commission tended to show the following: Plaintiff was injured when a scrap of wood flew out of a saw and struck his right arm and left hand. As a result, plaintiff can lift only ten pounds of weight. Before he was injured he regularly lifted seventy-five to one hundred pounds of lumber. Plaintiff no longer can drive nails with a hammer or work well with his hands.

Plaintiff was born 15 June 1924 and at the time of the hearing was sixty years old. He attended the fourth grade of school. His only substantial work experience was in the lumber industry as a cabinet maker. He can measure lumber but cannot read or write.

An orthopedic surgeon, John H. Caughran, examined plaintiff. His tests showed plaintiff suffered impaired right elbow function, limited right wrist extension, and markedly limited right-hand finger function. Right hand grip strength was twenty-five pounds and left hand grip strength was forty pounds; normal grip strength ranges between one hundred and one hundred thirty pounds.

Dr. Caughran opined that plaintiff could not return to his previous job in the cabinet shop or do other manual labor. He be-

---

1. All statutes cited in this opinion appear in Chapter 97 of the North Carolina General Statutes. All further statutory citations will be to section numbers within Chapter 97.

lieved, on the basis of plaintiff's age and illiteracy, plaintiff was not a candidate for vocational retraining. He concluded in light of plaintiff's medical infirmities that plaintiff's "job potential is zero."

With this and other evidence before it, the deputy commissioner made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff was born on June 15, 1924. He was in the 4th grade when he stopped attending school to begin working on a farm where he continued to work until he served in the Army from 1942 through November 13, 1943. Although plaintiff can neither read nor write, upon being discharged from the Army, he entered a trade school where he was trained as a cabinet maker.

. . . .

3. On May 24, 1982 plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer when he sustained injuries to his right forearm and left hand while operating a bench saw. . . .

. . . .

5. Plaintiff was . . . examined by Dr. John Caughran, at defendant's request on May 12, 1983 for the purpose of rendering an independent examination. Dr. Caughran was of the opinion that plaintiff had reached maximum medical improvement as of 5/12/83 and that he was permanently and totally disabled as a result of his injuries which Dr. Caughran rated as 30% of the left hand and 75% of the right hand.

. . . .

7. As a result of his injury by accident on May 24, 1982 plaintiff has sustained a 75% permanent partial disability to his right hand and a 30% permanent partial disability of his left hand.

8. Dr. Caughran was of the opinion that plaintiff would never be able to return to his previous work as a carpenter in a cabinet shop operating saws and heavy machinery. Fur-

thermore, the loss of dexterity, loss of motion in the right hand, the profound weakness of the right hand and marked weakness of the left hand also preclude any consideration of plaintiff returning to any type of manual labor.

9. Due to plaintiff's age and his inability to read or write, he is not a viable candidate for job retraining by Vocational Rehabilitation. Consequently, he is permanently and totally disabled as a result of his injury by accident.

\* \* \* \*

The above findings of fact and conclusions of law engender the following additional

### CONCLUSIONS OF LAW

1. As a result of his injury by accident sustained on May 24, 1982, plaintiff is entitled to compensation for 75% permanent partial disability to his right hand, and 30% permanent partial disability to his left hand. G.S. § 97-31(12).

2. Although plaintiff is permanently totally disabled, all of his injuries are included in the schedule set out in G.S. § 97-31, and the fact that an injury is one enumerated in the schedule of payments set forth under this section precludes the Commission from awarding compensation under any other provision of the Act. . . .

The Full Commission adopted the hearing commissioner's findings of fact, and defendants have excepted to none of these. The Commission, however, amended the deputy commissioner's conclusions of law as follows:

As a result of his injury by accident on 24 May 1982, plaintiff is permanently and totally disabled and is entitled to lifetime benefits under the Act. G.S. 97-2(9), G.S. 97-29.

Upon these findings of fact and conclusions of law, the Commission awarded plaintiff compensation, subject to attorney's fees, for the remainder of his life.

II.

Plaintiff contends the Court of Appeals erred in reversing the Commission's award of lifetime benefits for total and perma-

nent disability as provided by section 29. The Commission found as fact that plaintiff suffered partial medical disability to his arms or, in the language of the Act, partial loss of use of his arms. The schedule of compensation codified at section 31 lists partial loss of use of arms as a compensable injury. The resolution of plaintiff's claim, therefore, depends upon the following language of section 31:

> In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the periods specified, *and shall be in lieu of all other compensation.*

§ 31 (emphasis added).

Defendants contend this Court's interpretation of the "in lieu of" clause in section 31 in *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397, controls this case. The claimant in *Perry* suffered a work-related injury in the employment of the Hibriten Furniture Company. Medical experts agreed that he lost between twenty-five and seventy-five percent of the use of his back. Their testimony indicated that Perry was "probably unable to carry out gainful employment" and "probably disabled from any useful occupation." Perry testified he suffered pain in his back and legs and could not lift or bend without hurting. The Industrial Commission concluded that Perry sustained a fifty percent loss of the use of his back and awarded 150 weeks' compensation pursuant to section 31(23). Perry argued he was entitled to compensation for permanent total disability under section 29. This Court, quoting section 31 and emphasizing the phrase "in lieu of all other compensation," disagreed. It held that section 31 was claimant's exclusive remedy:

> The language of G.S. 97-31 . . . compels the conclusion that if by reason of a compensable injury an employee is unable to work and earn *any* wages he is totally disabled, G.S. 97-2(9), and entitled to compensation for permanent total disability under G.S. 97-29 *unless all his injuries are included in the schedule set out in G.S. 97-31.* In that event the injured employee is entitled to compensation exclusively under G.S. 97-31 regardless of his ability or inability to earn wages in the same or any other employment.

*Id.* at 93-94, 249 S.E. 2d at 401 (emphases in original).

In *Fleming v. K-Mart Corp.*, 312 N.C. 538, 324 S.E. 2d 214 (1985), this Court expressed a willingness to depart from the rule stated in *Perry*. The claimant in *Fleming* suffered a work-related back injury which caused chronic back and leg pain. The pain prevented plaintiff from remaining in any one position for an extended period of time. If he sat for a long period of time, his back hurt, and he had to get up. When he stood up, his legs hurt, and he had to sit down. A deputy commissioner found as fact that plaintiff suffered a fifty percent loss of use of his back and awarded 150 weeks' compensation under section 31(23). The Full Commission concluded that plaintiff was totally and permanently disabled within the meaning of section 2(9) and entitled to compensation under section 29. The Full Commission modified the deputy commissioner's award accordingly. The Court of Appeals and this Court affirmed. We stated:

> If an injured employee is permanently and totally disabled as the term is defined by N.C.G.S. 97-2(9), then he or she is entitled to receive compensation under N.C.G.S. 97-29. *See West v. Bladenboro Cotton Mills*, 62 N.C. App. 267, 302 S.E. 2d 645 (1983); *Cook v. Bladenboro Cotton Mills*, 61 N.C. App. 562, 300 S.E. 2d 852 (1983). *See generally* Note, *North Carolina General Statutes Section 97-31: Must it Provide Exclusive Compensation for Workers who Suffer Scheduled Injuries?*, 62 N.C. L. Rev. 1462 (1984).

*Fleming v. K-Mart Corp.*, 312 N.C. at 547, 324 S.E. 2d at 219. Thus, in *Fleming* we permitted a totally and permanently disabled employee to recover lifetime benefits under section 29 even though his injuries were included within section 31.

Although we observed that claimant was entitled to compensation benefits under section 29 "directly," we did not expressly overrule *Perry's* interpretation of the "in lieu of" clause. We said:

> Although it is clear that because plaintiff is totally unable to earn any wages, he is disabled within the meaning of N.C.G.S. 97-2(9) and thus entitled to benefits under N.C.G.S. 97-29 directly, we note that if the Commission had analyzed plaintiff's case by turning first to the schedule of injuries in N.C.G.S. 97-31, it should have come to the same con-

clusion. N.C.G.S. 97-31(19) states that "[t]otal loss of use of a member . . . shall be considered as equivalent to the loss of such member. . . ." N.C.G.S. 97-31(17) provides that "[t]he loss of . . . both legs . . . shall constitute total and permanent disability, to be compensated according to the provisions of G.S. 97-29." The Commission's findings support a conclusion that plaintiff suffered total loss of use of both of his legs due to arachnoiditis. Therefore, under N.C.G.S. 97-31(17) plaintiff would be entitled to receive benefits under N.C.G.S. 97-29.

*Id.*

In this case the Commission did not find, and there is no evidence to support a conclusion, that plaintiff suffered total loss of the use of his arms. The question, therefore, is squarely presented whether we continue to observe *Perry's* interpretation of the "in lieu of" clause to preclude a claimant who qualifies as being totally and permanently disabled from recovering lifetime compensation under section 29 if all his injuries are listed in the schedule of section 31.

We believe the time has come to revisit and reconsider the interpretation given to the "in lieu of" clause. In *Harrell v. Harriett & Henderson Yarns*, 314 N.C. 566, 336 S.E. 2d 47 (1985), we instructed the Commission on the proper disposition of the case on remand as follows:

[T]he Industrial Commission, on remand of this case, may find that claimant had a disability resulting from an occupational disease and make an award under G.S. 97-52 and 97-29. There is also evidence from which the Commission could find that no disability resulted from an occupational disease. It may then award compensation under 97-31(24) for partial loss of lungs. *It cannot, however, make an award under both sections because compensation under G.S. 97-31 is "in lieu of all other compensation."* N.C. Gen. Stat. § 97-31 (1979). *See Fleming v. K-Mart Corp.*, 312 N.C. 538, 324 S.E. 2d 214 (1985) . . . .

*Id.* at 578, 336 S.E. 2d at 54 (emphasis added).

Under this interpretation, the "in lieu of" clause prevents an employee from receiving compensation under both sections 29 and

31. Section 29 is an alternate source of compensation for an employee who suffers an injury which is also included in the schedule. The injured worker is allowed to select the more favorable remedy, but he cannot recover compensation under both sections because section 31 is "in lieu of all other compensation."

For the reasons which follow, we conclude that the "in lieu of" clause does not prevent a worker who qualifies from recovering lifetime benefits under section 29 and *Perry*, to the extent it holds otherwise, should be overruled.

The legislature apparently adopted the "in lieu of" clause in response to this Court's decision in *Stanley v. Hyman-Michaels Co.*, 222 N.C. 257, 22 S.E. 2d 570 (1942). When *Stanley* was decided, section 31 did not contain the "in lieu of" clause. The claimant in *Stanley* suffered two scheduled injuries, loss of his left leg and loss of the use of fifty percent of his right foot, in an industrial accident. The Industrial Commission noted that section 31 provided that the loss of both arms or hands, or vision in both eyes " 'shall be deemed permanent total disability,' " and shall be compensated under section 29 but did not state that the loss of the leg and the partial loss of the other foot will constitute such disability. *Stanley v. Hyman-Michaels Co.*, 222 N.C. at 260, 22 S.E. 2d at 572. Thus, the Commission concluded that claimant's exclusive remedy was the scheduled payments provided in section 31. This Court reversed, saying:

> The fact that the Workmen's Compensation Act states that certain injuries shall be deemed permanent and total disability, does not mean that permanent total disability can be found to occur only in those cases where the injuries come strictly within the enumerated class. The loss of both arms, hands, legs or vision in both eyes, under the statute, is conclusively presumed to be permanent total disability, and the Commission is directed so to find; however, the Commission still has power to find that other injuries or combination of injuries occurring in the same accident may result in permanent total disability and when the Commission so finds, the injured employee should be compensated as provided in section 29 of the Workmen's Compensation Act.

*Id.* at 260, 22 S.E. 2d at 572-73. *Stanley* allowed claimant to prove permanent and total disability and receive compensation under section 29, even though his injuries would have been compensable under section 31. When the legislature convened in the next session, it amended section 31 and added the "in lieu of" clause. 1943 N.C. Sess. Laws ch. 502, § 2.

We do not think the holding discussed above caused the legislature to act; rather our disposition of another issue in *Stanley* provides a more plausible basis for the ensuing legislative action. Section 31 included a provision authorizing the Commission "to make and award a reasonable compensation for any serious bodily disfigurement received by any employee within the meaning of this Act, not to exceed twenty-five hundred ($2,500) dollars." 1929 N.C. Sess. Laws ch. 120, § 31(t). The Commission stated that plaintiff was not entitled to recover scheduled compensation for loss of bodily parts and recover additional compensation under the disfigurement section, when the disfigurement resulted from the same loss of parts for which compensation already had been awarded. This Court reviewed the legislative history of section 31:

> If the legislature intended to restrict compensation for disfigurement to those parts, members or organs of the body for which no compensation is provided in the schedules, we think it failed to express such intention in the statute. . . .

> The General Assembly in enacting our Workmen's Compensation Act, undoubtedly gave consideration to the limitation of the recovery to that fixed in the schedules for . . . the original bill as introduced provided: "In cases included by the following schedule, the incapacity in each case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be specified therein, and shall be in lieu of all other compensation." However, the Act as adopted . . . does not contain the clause in sec. 31, "and shall be in lieu of all other compensation."

*Stanley*, 222 N.C. at 262-63, 22 S.E. 2d at 574. We are satisfied this holding in *Stanley* provoked the legislature to enact the "in lieu of" clause to express its intent not to permit compensation for both loss and disfigurement of body parts.

The legislature's subsequent action, moreover, in expanding section 29 strongly suggests its intent not to make section 31 an exclusive remedy for an employee who also qualifies for compensation under section 29. As originally enacted, section 29 limited compensation for total permanent disability to a maximum of 400 weeks. 1929 N.C. Sess. Laws ch. 120, § 29; 1949 N.C. Sess. Laws ch. 823, § 1. The legislature removed the time limitation in 1973. 1973 N.C. Sess. Laws ch. 1308, § 2. Before this amendment, both sections 29 and 30 limited compensation to a determinate period. The legislature's expansion of section 29 in 1973 reflects an obvious intent to address the plight of a worker who suffers an injury permanently abrogating his earning ability. We are guided by several principles of statutory construction in interpreting the legislative action. The polar star is that legislative intent controls. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). In ascertaining that intent, courts should consider the language of the statute, the spirit of the act, and what the statute seeks to accomplish. Equally well recognized is that the Workers' Compensation Act should be liberally construed so that its benefits are not denied by narrow, technical or strict interpretation. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). *Accord Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E. 2d 814 (1986). Further, statutes *in pari materia* are to be construed together and reconciled when possible, and any irreconcilable ambiguity should be resolved so as to effectuate the true legislative intent. *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 400, 269 S.E. 2d 547, 561 (1980); *Taylor v. Stevens & Co.*, 300 N.C. 94, 102, 265 S.E. 2d 194, 198 (1980). A construction of section 31 which gives full effect to the legislature's expansion of benefits under section 29 is that the "in lieu of" clause prevents double recovery without making the schedule an exclusive remedy.

The policy of the Workers' Compensation Act supports the interpretation stated above. One purpose of the Act is to compensate injured employees for lost earning ability. "The term disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." § 2(9). *See* 2A Larson, *The Law of Workmen's Compensation* § 57.11 (1983). The Act represents a compromise between the employer's and employee's interests. The employee surrenders his right to common law damages in

return for guaranteed, though limited, compensation. The employer relinquishes the right to deny liability in return for liability limited to the employee's loss of earning capacity.

> [T]he act under consideration contains elements of a mutual concession between the employer and the employee . . . .
> "Both had suffered under the old system, the employer by heavy judgments . . . the employee through old defenses or exhaustion in wasteful litigation. Both wanted peace. The master in exchange for limited liability was willing to pay on some claims in the future where in the past there had been no liability at all. The servant was willing not only to give up trial by jury, but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it."

*Conrad v. Foundry Company*, 198 N.C. 723, 725-26, 153 S.E. 266, 268 (1930). Allowing a totally and permanently disabled employee lifetime compensation effectuates the purpose of the Act to compensate for lost earning ability.

This result does not conflict with the purpose of section 31. An employee may recover compensation under section 31 without regard to actual loss of earning ability. *Watts v. Brewer*, 243 N.C. 422, 90 S.E. 2d 764 (1956). Diminished earning ability is conclusively presumed with respect to the losses included in the schedule for the period specified therein. *Harrell v. Harriett & Henderson Yarns*, 314 N.C. 566, 336 S.E. 2d 47 (1985). Although section 31 relieves an employee from proving diminished earning capacity for injuries caused thereunder, it was not, we believe, intended to mean that the presumption of reduced earning capacity should be used to the employee's detriment. The purpose of the schedule was to expand, not restrict, the employee's remedies.

Equity strongly supports the result we reach in this case. Plaintiff was fifty-eight years old at the time he was injured. He enjoys no prospect of gainful employment. He will continue to require benefits for a period long after the compensation authorized by section 31(13) becomes depleted. We do not believe the legislature, as evidenced by the expansion of section 29, intended such an inequitable result to prevail.

Defendants do not dispute the Commission's conclusion that plaintiff is totally and permanently disabled within the meaning

of section 29. They oppose the Commission's award of compensation under section 29 solely on the ground that the "in lieu of" clause prohibits such a recovery. Our decision having eliminated this obstacle, the Industrial Commission's award is reinstated and the decision of the Court of Appeals is

Reversed.

Justice BILLINGS dissenting.

In discussing the rules of statutory construction, the majority opinion overlooks the one rule which I believe decides this case and requires that we affirm the Court of Appeals. As stated in 73 Am. Jur. 2d *Statutes* § 143 (1974): "The interpretation of a statute by the highest courts of a state by which the statute was enacted is generally regarded as an integral part of the statute, . . . . A statutory construction, once made and followed, should never be altered upon the changed view of new personnel of the court," citing *Burtt Will*, 353 Pa. 217, 44 A. 2d 670 (1945). This is obviously because the legislature has the power, in fact the duty, to change or clarify its statutory provisions if the courts misconstrue them. In the absence of legislation amending a statute following the court's interpretation of it, the conclusion is inescapable that the interpretation is consistent with legislative intent.

Although the majority seems to concede that application of *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978) would require that we affirm the Court of Appeals, the opinion of the majority says: "We believe the time has come to revisit and reconsider the interpretation given to the 'in lieu of' clause." Since 1978 when *Perry* was decided, the North Carolina General Assembly has not seen fit to amend the portion of N.C.G.S. § 97-31 which was construed therein and which controls this case. Because I believe that it is the province of the legislature to change a statute once construed by this Court, not the province of this Court to vacillate regarding the construction to be given to legislation, I dissent from the majority opinion. I would follow *Perry* and affirm the Court of Appeals.

Chief Justice BRANCH and Justice MEYER join in this dissenting opinion.

Justice MEYER dissenting.

For the reasons stated in my dissenting opinion in *Fleming v. K-Mart Corp.*, 312 N.C. 547, 324 S.E. 2d 214 (1985), I dissent.

N.C.G.S. § 97-31 provides that scheduled injuries "*shall be in lieu of all other compensation,* including disfigurement." The majority speculates that the General Assembly in enacting the "in lieu of" clause, expressed an intent not to permit compensation for both loss and disfigurement of body parts, but did not preclude one entitled to scheduled benefits under N.C.G.S. § 97-31 from seeking, in the alternative, total disability benefits under N.C.G.S. § 97-29.

I fail to understand the majority's reasoning in reaching this result. If, as the majority opinion suggests, the legislative object in amending the act to include the words quoted above was to eliminate double compensation for a scheduled loss *and* disfigurement, it would have been unnecessary to use the language "*including disfigurement.*" Had the General Assembly intended this to be the only object of the amendment, use of the words "*all other compensation*" would have been unnecessary. A plain reading of the statute suggests that the language used was carefully chosen to make scheduled benefits the exclusive form of benefit for persons sustaining scheduled injuries.

While it is difficult to ascertain the exact intent of the legislature in enacting the "in lieu of" clause, a contemporaneous summary of the 1943 legislative session's Workmen's Compensation Act amendments states that the purpose of the amendment (1943 N.C. Sess. Laws ch. 502) "probably was to provide for payments during the actual healing period, but in no event for less than the length of time specified in the schedule." "Workmen's Compensation Act," Popular Government, June 1943, at 34. This is consistent with the theory that scheduled injuries are designed to replace *all other forms of compensation* and thus eliminate the need to determine the exact period or extent of disability.

I hasten to add that I would find no objection in the result reached if it resulted from legislation enacted by the General Assembly, rather than by the majority's judicial legislation.