The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
The parties at the initial hearing before the Deputy Commissioner stipulated that defendants had continued to pay compensation to plaintiff up to the date of the initial hearing. In addition, they stipulated into evidence the following:
1. A packet of medical records and reports.
2. A packet of reports from OccuSystems, Inc.
3. A Form 21 agreement has been approved in the case and is incorporated by reference.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of October 7, 1991, plaintiff had been employed by defendant-employer nine years as a form carpenter. Defendant-employer performed commercial construction work, and plaintiff's job involved building forms for concrete to be poured into in order to make concrete structures. He sustained a compensable injury by accident on October 7, 1991 when he walked into a pipe, striking his head against it and knocking off his hard hat. Dr. Franklin treated him initially for complaints of pain in his neck, right shoulder and trapezius areas, but he was subsequently referred to Dr. Jones, a neurosurgeon, when he developed numbness in his right thumb.
2. Dr. Jones had previously treated plaintiff and performed surgery for a lumbar spine injury. When he examined plaintiff on October 11, 1991, he was of the impression that plaintiff has a right cervical radiculopathy. He prescribed conservative treatment. However, plaintiff was still complaining of significant arm pain on November 6 therefore an MRI was ordered. It revealed cervical spondylosis which was worst at C5-6 with bilateral foraminal stenosis, but no definite disc herniation. Dr. Jones hospitalized plaintiff on November 25 for a myelogram and then performed surgery on November 26 to decompress the C5-6 interspace.
3. Following the surgery, plaintiff experienced significant problems with neck pain, but the pain subsequently responded to medication. By May 1992 his neck was doing well but he was reporting symptoms in his right hand with vigorous use plus dizziness when he looked upwards. He was referred to Dr. Steel for nerve tests. The tests revealed mild carpal tunnel syndrome, a condition unrelated to his injury.
4. On August 26, 1992 Dr. Jones determined that plaintiff had reached maximum medical improvement with respect to his injury at work. However, plaintiff was not able to return to work in his former capacity. Dr. Jones at that time felt that he could work as long as he was not required to lift over twenty pounds, to do any heavy pushing or pulling or to look up for any length of time. Plaintiff was still having problems feeling as though he was going to black out when he extended his neck. Dr. Jones also rated him for a 15% permanent partial disability to his back.
5. As of August 1992, plaintiff was almost 64 years old. He had a fifth grade education and could not read or write well. His work experience was apparently limited to construction labor work, primarily form carpentry. He had preexisting health problems, including a low back condition from the prior injury at work. It is not known when his vertebral basilar insufficiency developed, but it appeared from the evidence that it would have developed over a significant period of time. His employer did not have work suitable to his capacity at that time and, considering his age, education and limitations, it would have been extremely difficult for him to have obtained work that he could perform.
6. On November 24, 1992 Dr. Jones authorized plaintiff to not work at all due to the constellation of problems he was experiencing. Defendants subsequently sent him to Dr. Fulghum for another opinion. Dr. Fulghum examined him on December 20, 1993 and was of the impression that he had recovered reasonably well from the injury. With respect only to the cervical spine injury, Dr. Fulghum felt that he could work with no lifting over 25 pounds and no prolonged sitting or standing for over an hour without a break. However, his vertebral symptoms with head movements were an additional limiting factor, and Dr. Fulghum indicated that plaintiff was subject to having a mini-stroke at any time so that he should not drive. He was also given a 10% permanent partial disability rating.
7. Defendants admitted liability for benefits under the Workers' Compensation Act for this injury and paid compensation to plaintiff for temporary total disability. They began to provide him with vocational placement assistance in early 1993. In approximately April 1993 Rebecca Stone, the rehabilitation consultant, found a position with an automobile dealership which involved driving a shuttle van on a part-time basis. Although plaintiff went out to the dealership to inquire about the position, he would not sign an employment application because he did not believe it would be safe for him to drive the van. Defendants subsequently requested that they be allowed to stop payment of compensation due to his refusal to pursue this job.
8. The shuttle van driver position was not suitable for plaintiff due to his vertebral basilar insufficiency, and it would not have been safe for him to perform a job which required driving. His refusal to apply for the job was therefore justified.
9. There is no evidence that a suitable job was ever discovered which plaintiff could have obtained and performed. Apparently the vocational placement efforts were discontinued in view of Dr. Jones' statement that he was totally disabled. The rehabilitation service closed its file after Dr. Fulghum stated that plaintiff should not be driving. By that point, it appeared that placement efforts would be futile.
10. As a result of the injury by accident giving rise to this claim, plaintiff has remained unable to earn wages in any employment. Although he reached maximum medical improvement on August 26, 1992 and sustained a 12.5% permanent partial disability to his back as a result of the injury, he would receive more compensation for actual wage loss and has elected to receive such compensation.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff is entitled to continuing compensation for total and permanent disability at the rate of $213.34 per week for the remainder of his life, barring change of condition. N.C. Gen. Stat. § 97-29; Whitley v. Columbia Lumber Mfg. Co.,318 N.C. 89 (1986); Russell v. Lowe's Products Distribution,108 N.C. App. 762 (1993).
2. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay continuing compensation to plaintiff for total and permanent disability at the rate of $213.34 per week for the remainder of his lifetime, barring change of condition, subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of 25% of the compensation awarded is approved for plaintiff's counsel. He shall receive every fourth check of such compensation.
4. Defendants shall pay the costs due this Commission.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER