The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. As the appealing parties have shown good ground to reconsider the evidence and amend the Opinion and Award, the Full Commission adopts in part and reverses in part the Opinion and Award of the Deputy Commissioner, with modifications to Conclusions of Law Nos. 2, 3 and 4, and the resulting award.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant on 1 November 1995.
3. On 1 November 1995, plaintiff sustained a compensable injury arising out of and in the course of his employment with defendant.
4. Defendant is self-insured with Sedgwick of the Carolinas as the administrator.
5. Plaintiff's average weekly wage is $519.00, yielding a compensation rate of $346.02 per week.
6. Industrial Commission Form 18 is admitted into evidence as Stipulated Exhibit 2.
7. Industrial Commission Form 19 is admitted into evidence as Stipulated Exhibit 3.
8. Industrial Commission Form 21, dated 15 November 1995 and approved by the Commission 18 January 1996, is admitted into evidence as Stipulated Exhibit 4.
9. Industrial Commission Form 28T is admitted into evidence as Stipulated Exhibit 5.
10. Industrial Commission Form 62, dated 2 July 1997, is admitted into evidence as Stipulated Exhibit 6.
11. Industrial Commission Form 33 is admitted into evidence as Stipulated Exhibit 7.
12. Industrial Commission Form 33R is admitted into evidence as Stipulated Exhibit 8.
13. Industrial Commission Form 25R, as well as plaintiff's medical records from the following providers, as well as Industrial Commission Form 25R, are admitted into evidence as Stipulated Exhibit 9: Dr. Lescosky, Dr. Lassiter, ProActive Therapy, and Genex.
14. Plaintiff's vocational records are admitted into evidence as Stipulated Exhibit 10.
15. The Executive Secretary's Order filed 18 April 1997, defendant's Form 24 Application, Special Deputy Commissioner Ronnie Rowell's Order suspending plaintiff's temporary total disability from 9 June 1997 due to plaintiff's refusal to return to suitable employment, and the Form 28B dated 2 July 1997 are admitted into evidence.
16. To what further benefits (including medical treatment), if any, is plaintiff entitled as a result of his 1 November 1995 compensable injury.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On 1 November 1995, plaintiff was a 66-year old male. He began his employment with defendant as a quality control inspector on 27 February 1995. These duties entailed greeting customers, finding out problems with a car, test driving a vehicle after it had been worked on and making sure the customer was satisfied.
2. On 1 November 1995 plaintiff sustained a compensable injury when a technician backed a car off a rack and ran over plaintiff's left heel. Plaintiff initially sought treatment from Dr. Klein at Urgent Care. Dr. Klein referred plaintiff to Dr. Frank Lescosky, a podiatrist.
3. Dr. Lescosky's examination revealed that plaintiff suffered from pain in his left heel plantar centrally and plantar medially along with some bolstering of the plantar fascia, and pain in the central arch with pain and dorsiflexion of the left foot. However, plaintiff was not cut, nor did he sustain any bruising or swelling as a result of the 1 November 1995 injury. Plaintiff did not have any evidence of physical injury to his left heel, and his shoe was undamaged.
4. The parties entered into a Form 21 Agreement on 15 November 1995 with respect to plaintiff's 1 November 1995 compensable injury. The Agreement was approved by the Commission on 18 January 1996.
5. Plaintiff underwent conservative treatment consisting of physical therapy, ultrasound and the use of orthopedic shoes.
6. By 13 June 1996 plaintiff was capable of performing sedentary jobs. Plaintiff reached maximum medical improvement on 25 July 1996 and Dr. Lescosky rated plaintiff with a ten percent (10%) permanent partial disability to his left foot. Dr. Lescosky released plaintiff from his care in October 1996. Following plaintiff's release by Dr. Lescosky, defendant requested that plaintiff present to Dr. Tally Lassiter. Dr. Lassiter agreed with the ten percent (10%) rating and agreed that plaintiff was able to perform a sedentary position.
7. On 3 January 1997 defendant offered plaintiff a job as a cashier/receptionist. The physical requirements of the job were within Dr. Lescosky's restrictions of no prolonged walking or standing. The rate of pay was $6.00 per hour, forty (40) hours per week.
8. Plaintiff declined defendant's reasonable job offer claiming the position required plaintiff to get up and down. Plaintiff then returned to Dr. Lescosky complaining about the job offer and questioning the ten percent (10%) rating.
9. Upon defendant's Motion that plaintiff be required to cooperate with medical treatment and vocational rehabilitation, on 18 April 1997 the Executive Secretary issued an Order for plaintiff to comply with reasonable vocational rehabilitative efforts.
10. Plaintiff returned to Dr. Lassiter in May 1997. Dr. Lassiter maintained that plaintiff was capable of performing the cashier/receptionist job, which was consistent with his sedentary physical requirements. Plaintiff disagreed with Dr. Lassiter and argued that he was not physically able to do perform the position. Plaintiff did not base his inability to go back to employment with defendant at this time on any strong, negative feelings against the employer.
11. After plaintiff's May 1997 visit with Dr. Lassiter, defendant again offered him the position of cashier/receptionist. Plaintiff returned to Dr. Lescosky on 3 June 1997 to discuss the job. Plaintiff's complained that he could not do the job due to continuing pain and the medications he was taking. However, upon review of the job description, Dr. Lescosky indicated that the duties described were appropriate for a person with ambulatory pain. On 6 June 1997, Dr. Lescosky spoke with plaintiff's attorney at that time, Kirk Kuhns. Subsequent to the conversation, Dr. Lescosky noted for the first time that plaintiff harbored strong negative feelings toward defendant, which would make it counterproductive for plaintiff to return to work in that environment.
12. At the hearing before the Deputy Commissioner, plaintiff was questioned concerning why he had negative feelings about going back to work for defendant. Plaintiff responded that he feared slipping on oil or grease. The Deputy Commissioner found, and the undersigned agree, that plaintiff's concerns were not valid since the cashier/receptionist position is located on a carpeted area near where patrons wait for their cars and away from the actual area cars are worked on. Likewise, plaintiff's complaints that he did "not like Mr. Pecheles' lifestyle" or that he was angry when they abolished his former position, are not grounds which justify refusing the job.
13. Defendant filed a Form 24 Request for Termination of Compensation in June 1997. By Order filed 4 September 1997, Special Deputy Commissioner Ronnie Rowell found that the employment offered by defendant was suitable, and suspended plaintiff's compensation from 9 June 1997 until plaintiff's refusal to return to such suitable employment ceased. The Order further provided that if defendant again offered employment, plaintiff was obligated to attempt a trial return to work in keeping with the rules and statutory provisions of the Act. The Special Deputy Commissioner also provided that plaintiff remained entitled to his permanent partial disability rating, subject to defendants' right to a credit for payments made when not due and payable under the Act.
14. Prior to the issuance of the Order suspending benefits, plaintiff found a job as an assistant pastor with a local Assembly of God. This job entailed working with and counseling parishioners, and visiting people in the hospital. Plaintiff worked approximately five (5) hours per day, two (2) days per week from 26 June 1997 through 31 December 1997. Plaintiff was able to do this job without difficulty. During the time plaintiff was with the Assembly of God, defendant paid him temporary partial disability compensation to make up the difference in his lost wages. Although defendant submitted a Form 28T with respect to plaintiff's employment at Assembly of God, plaintiff did not file a Form 28U when he left the position at the church on 31 December 1997. The greater weight of the evidence is that plaintiff's departure from his position at the church was not due to causes resulting from his compensable injury.
15. The undersigned do not accept plaintiff's reasons for refusing defendant's job offer of the cashier/receptionist as justified or credible. Although the position has a small amount of computer use, such as keying in a name and number, defendant has to train anyone on the use of that program since it is unique to the car business. Plaintiff's statements at the hearing before the Deputy Commissioner, as well as the manner in which he said them, reflected a prejudice toward any work he conceived to be "office work." The position of cashier/receptionist requires public relations experience in dealing with customers. It has many of the same characteristics of his old position, minus the test driving of cars, but with the addition of collecting money. Plaintiff's past work experience has included an insurance salesman, and he collected money in that position.
16. Based upon a thorough reading of the medical records and depositions, as well as the Deputy Commissioner's observations of the plaintiff getting around the courtroom and walking up steps to the witness chair with no problems, her observation of both plaintiff's words and the manner in which he said them, his body language and eye contact, leads the undersigned to determine that plaintiff is capable of performing the cashier/receptionist position and was not justified in refusing to do so.
17. The essential functions of the position of cashier/receptionist are to greet customers at the cashier service window, answer the phone, collect payment from the customer and basic data entry via computer. Defendant provides on-the-job training for this position. This position is not make-work and the position actually exists at defendant's place of business. The position is also comparable with similar jobs at other car dealerships in the area.
18. Plaintiff's physicians have recommended some sort of pain management program which defendant has not yet approved. Given the lack of objective physical evidence supporting plaintiff's complaints of pain, an evaluation by a pain management specialist or psychiatrist would be beneficial.
19. Plaintiff is not permanently and totally disabled at this time. Both of plaintiff's examining physicians released him to work with restrictions, and a suitable position was offered to plaintiff by defendant.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Since the parties entered into a Form 21 Agreement, approved by the Commission 18 January 1996, plaintiff is entitled to a presumption of continuing disability. Defendant has submitted sufficient evidence there was a suitable job offered to plaintiff. It was not reasonable for plaintiff to refuse this position. The position was a regular position offered by defendant and not a created one or "make-work." Plaintiff has not provided sufficient credible evidence showing his inability to perform this job or that plaintiff is continuously, totally disabled. Plaintiff is not entitled to further total disability compensation, effective 9 June 1997. N.C. Gen. Stat. § 97-32.
2. The evidence shows that plaintiff reached maximum medical improvement on 25 July 1996. As plaintiff had not returned to work at that time, he was required to elect whether to receive continuing temporary total disability, or to receive his rating. Whitley v. Columbia Lumber Co., 318 N.C. 89,348 S.E.2d 346 (1986). By accepting defendant's payment of continuing temporary total disability, plaintiff essentially made his election. Plaintiff collected temporary total disability benefits for fifty-eight weeks prior to his eligibility for continuing benefits was suspended beginning 9 June 1997. Because these benefits received by plaintiff were clearly more lucrative than the fourteen weeks of compensation he would have received under N.C. Gen. Stat. § 97-31, he is not eligible to receive further benefits pursuant to his permanent partial disability rating. Id.
3. Because plaintiff unjustifiably refused to accept a suitable job offer which resulted in the suspension of his right to benefits as of 9 June 1997, and as that position continued to be available to plaintiff, he is not eligible for temporary partial disability benefits for the subsequent period of time during which he worked part-time as an assistant pastor for the First Assembly of God at reduced wages. N.C. Gen. Stat. § 97-32.
4. Defendant is entitled to a credit for all temporary total and temporary partial compensation paid subsequent to the suspension of plaintiff's benefits on 9 June 1997, as they were not due and payable under the Act when made. N.C. Gen. Stat. § 97-42.
5. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability, subject to the limitations contained in N.C. Gen. Stat. § 97-25.1. This includes treatment by a pain management specialist or psychiatrist. N.C. Gen. Stat. § 97-25.
6. Because at this time there is insufficient medical evidence to show that plaintiff is permanently and totally disabled, he is not eligible for compensation under N.C. Gen. Stat. § 97-29.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred by plaintiff as a result of his compensable injury for so long as such treatments tend to effect a cure, give relief or tend to lessen plaintiff's disability, subject to the limitations contained in N.C. Gen. Stat. § 97-25.1. This includes treatment by a pain management specialist or psychiatrist.
2. Because plaintiff has already received the greater of the two options available to him pursuant to an election of benefits upon reaching maximum medical improvement, any claim for further benefits based upon his permanent partial disability rating is denied.
3. Defendant is entitled to a credit for all temporary total and temporary partial disability payments made to plaintiff subsequent to 9 June 1997.
4. A reasonable attorney fee in the amount of twenty-five percent (25%) of the sums awarded plaintiff is due plaintiff's counsel.
5. Defendant shall pay the costs.
This the ___ day of June, 1999.
 S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/jbd