***********
The Full Commission, based upon the record of the proceedings before Deputy Commissioner George T. Glenn, II, and the briefs and oral arguments on appeal, reviewed this matter. The appealing party has failed to show good ground to amend the holding of the prior Opinion and Award. Accordingly, the Full Commission affirms the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts, and concludes of matters of law, the following, which were entered into by the parties at and subsequent to the hearing before the Deputy Commissioner on 22 May 2001 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the decedent at all relevant times herein.
3. The defendant-employer was an approved self-insured, with Key Risk Management Services acting as its servicing agent at all relevant times herein.
4. The decedent's average weekly wages will be determined from an Industrial Commission Form 22 Wage Chart to be submitted by the defendant.
5. On 30 January 2000, the decedent sustained a compensable injury by accident arising out of and in the course and scope of his employment with the defendant-employer that resulted in his death.
6. The decedent did not have any person wholly dependent for support upon his earnings at the time of his death.
7. The following exhibits were stipulated into evidence:
a. an Industrial Commission Form 22;
b. an Industrial Commission Form 19;
c. an accident report;
d. a family tree diagram of the decedent's family;
e. a Statement from Stanley Furniture, and;
f. a Statement from Breeden Insurance Company;
8. The issues to be determined from this hearing are as follows:
 a. Whether Christopher N. Frady and/or Ricky D. Jones, Jr., grandchildren of the decedent, were partially dependent for support upon the earnings of the decedent at the time of his death;
 b. If so, to what, if any, benefits are they entitled, and;
c. If not, to whom shall benefits be paid.
 ***********
Based upon the evidence of record, the undersigned enters the following;
 FINDINGS OF FACT
1. On 30 January 2000, the decedent suffered a compensable injury by accident arising out of and in the course and scope of his employment with the defendant-employer that resulted in his death.
2. The decedent's average weekly wage at the time of his death was $789.10, yielding a compensation rate of $526.09.
3. At the time of his death, the decedent was survived by his mother, Ms. Mabel Frady; seven brothers and sisters, Ms. Kathleen Clodfelter, Ms. Deanna Sink, Ms. Mary Ellen Cain, Ms. Patricia Whittington, Ms. Maylon Frady, Mr. Paul Richard Frady, and Mr. Darrell Frady; a son-in-law, Mr. Ricky D. Jones, Sr.; a step-daughter, Deborah Boyd; a step-grandson, Mike Wilson; and two grandsons, Christopher N. Frady and. Ricky D. Jones, Jr.
4. Approximately four (4) years prior to the death of the decedent, his daughter, Ms. Tamara Frady Jones, her husband, Mr. Ricky D. Jones, Sr., and their two sons, the decedent's grandsons, Christopher N. Frady and Ricky D. Jones, Jr., leased a home from Mr. Andrew Jenkins, the step-father of Mr. Ricky D. Jones, Sr. The weekly rent for this residence was $100.00.
5. Mr. Ricky D. Jones, Sr., and the decedent's daughter, Ms. Tamara Frady Jones had drug and alcohol problems. As a result of these problems, Mr. Ricky D. Jones, Sr. and Ms. Tamara Frady Jones regularly did not have sufficient funds to meet the normal living expenses of their family. In an effort to assist the family, Mr. Andrew Jenkins and the decedent would intercede financially on the family's behalf on a regular basis in meeting their normal living expenses.
6. Approximately two (2) years prior to the death of the decedent, Mr. Andrew Jenkins ceased his efforts to assist the family financially. When Mr. Ricky D. Jones, Sr., and Ms. Tamara Frady Jones continued to be unable to pay their rent, Mr. Andrew Jenkins caused them and the decedent's grandsons to be evicted from the house he had leased them.
7. Following their eviction, the family moved into a motel room for approximately six to seven (6-7) months. The family was unable to move from the motel room until given assistance by the decedent, who paid all or part of the deposit, along with the initial rent on a trailer into which the family moved. Thereafter, the decedent interceded financially on the family's behalf on a regular basis to prevent the family from being evicted.
8. The decedent visited with his grandsons usually on a weekly basis. He also normally took them out to eat each weekend. When the decedent returned his grandsons home, he had usually provided the family with groceries to ensure that his grandsons were properly fed throughout the week.
9. Ms. Tamara Frady Jones became ill approximately one year prior to the decedent's death, and subsequently died in December 1999. After the onset of his daughter's illness, the decedent's involvement in the care and support of his grandsons increased. The decedent was the primary person who ensured that Christopher N. Frady and Ricky D. Jones, Jr. had clothes for school and also made certain that the boys had the incidental items each needed.
10. Based upon the credible evidence of record at the time of the decedent's death, his two grandsons, Christopher N. Frady and Ricky D. Jones, Jr., were equally partially dependent upon decedent for their support. At that time, no one else was wholly or partially dependent upon the decedent.
11. The evidence demonstrates that Christopher N. Frady and Ricky D. Jones, Jr. were dependent upon decedent for food, clothing, and shelter at the time of decedent's death.
12. Ricky D. Jones, Sr., given his history of drug and alcohol abuse, is unfit to receive benefits for his minor son. It is not clear from the record whether Andrew F. Jenkins is a General Guardian or a Guardian Ad Litem.
 ***********
Based upon the foregoing findings of fact, Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 30 January 2000, the decedent suffered a compensable injury by accident arising out of and in the course and scope of his employment with the defendant-employer that resulted in his death. G.S. §97-2(6); G.S. § 97-2(10).
2. At the time of his death, the decedent's average weekly wage was $789.10, yielding a compensation rate of $526.06 per week. G.S. §97-2(5).
3. As a result of the decedent's death, his estate is entitled to have the defendant pay for all medical expenses incurred. G.S. § 97-25.
4. Contrary to the defendant's contention, the language of G.S. §97-38(2) should not be read as providing that partial dependents such as those in the case at hand are only entitled to receive a small percentage of the deceased employee's benefits. Indeed, while the plain meaning of § 97-38(2) is difficult to ascertain, the remainder of the Act can be consulted regarding the intent of the General Assembly. Other provisions in the Act reflect the General Assembly's clear intent that a decedent's entire death benefits in cases such as this one should be apportioned among partial dependents according to the level of their dependency relative to each other, as is done in G.S. § 97-39. Id.; See also,Whitley v. Columbia Lumber Mfg. Co., 318 N.C. 89, 348 S.E.2d 336 (1986). It is the Commission's interpretation of the statutory language in question, as opposed to the defendant's proposed interpretation, that provides consistency within the Act. Pursuant to the defendants' interpretation, two persons (like the children in this case dependent upon decedent for food, clothing, and shelter) found to be partially dependent could receive only a small percentage of the death benefits, but if there were no persons wholly or partially dependent, the next of kin would receive the entire death benefit. Defendant's reading of the Act is overly technical and does not exhibit a liberal construction in favor of plaintiffs the courts have instructed us to employ.
5. At the time of the decedent's death, Christopher N. Frady and Ricky D. Jones, Jr. were partially dependent in equal amounts upon him for their support. G.S. § 97-38(2). Additionally, at the time of the decedent's death, no other persons were either wholly or partially dependent upon the decedent for support. G.S. § 97-38(1)(2). Decedent's entire death benefit is $526.06 per week. Accordingly, Christopher N. Frady, and Ricky D. Jones, Jr. are each entitled to be paid by the defendants, to share and share alike at the exclusion of all others, death benefits at the rate of $263.03 per week each for 400 weeks, commencing as of 30 January 2000.
G.S. § 97-38; G.S. § 97-40.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner, with modifications, and enters the following:
 AWARD
1. Subject to the attorney's fees approved herein, the defendants shall pay to Christopher N. Frady compensation at the rate of $263.03 per week for 400 weeks commencing as of 30 January 2000. Accrued amounts shall be paid in a lump sum.
2. Subject to the attorney's fees approved herein, the defendant shall pay to Mr. Andrew F. Jenkins, assuming he is the General Guardian for Ricky D. Jones, Jr, and for the use and benefit of the minor Ricky D. Jones, Jr., compensation at the rate of $263.03 per week commencing as of 30 January 2000, and continuing for 400 weeks, or until he reaches the age of eighteen (18), whichever occurs last. Accrued amounts shall be paid in a lump sum. If Mr. Andrew F. Jenkins is not the General Guardian, these monies shall be paid to the clerk of court in Davidson County for prudent dispersal to Ricky Jones Jr.'s General Guardian.
3. The defendants shall pay burial expenses not exceeding $2,000.00 to the person or persons entitled thereto.
4. The defendants shall pay for all medical expenses incurred by the decedent as a result of the said injury by accident.
5. A reasonable attorney fee in the amount of $10,000 is approved and awarded to the plaintiffs' counsel, with $5,000 to G. Thompson Miller and $5,000 to Robert B. Smith. The attorneys' fees shall be deducted from the compensation due the plaintiff. The attorneys' fees shall be paid directly to the plaintiff's attorneys.
6. The defendants shall pay the costs of this action.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER