***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before Deputy Commissioner Dollar as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Travelers Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The parties entered the following into the evidence of record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 — I.C. Forms 18, 19, 61, 33, and 33R
b. Stipulated Exhibit 2 — medical records — 104 pages
c. Stipulated Exhibit 3 — plaintiff's Answers to Interrogatories
d. Plaintiff's Exhibit 1 — termination letter
e. Defendants' Exhibit 1 — plaintiff's time card
f. Defendants' Exhibit 2 — safety instructions
g. Defendants' Exhibit 3 — Mr. Guray's time card
5. The issues for determination by the Commission are whether plaintiff sustained an injury by accident or specific traumatic incident of the work assigned on February 11, 2002; and if so, to what benefits is he entitled under the Act; and what is plaintiff's average weekly wage.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-six year old high school graduate, who was licensed as an electrician in Massachusetts and North Carolina. He had prior experience in construction and as an engineering technician.
2. In July of 2001, plaintiff sought treatment from his family physician, Dr. Mark Hawkins, for an episode of low back pain. He did not miss any time from work as a result of this episode. On January 21, 2002, plaintiff returned to Dr. Hawkins for a second episode of low back pain with no precipitating cause. On examination, there was no neurological deficit. Dr. Hawkins gave plaintiff a cortisone injection. Plaintiff lost no time from work as a result of the episode. An x-ray revealed degenerative joint disease at L4-5.
3. On February 11, 2002, plaintiff had been employed by defendants for approximately seventy-five days as an electrical maintenance technician, which included repairing machinery. The employer is a manufacturer of medical test tubes and plastic hydraulic extrusion equipment.
4. Based upon wage information, plaintiff's average weekly wage was $676.81 per week, yielding a compensation rate of $451.23 per week.
5. On February 11, 2002, plaintiff received a call to repair the #35 machine, which takes plastic bottles and melds them together. After inspecting the machine, plaintiff determined it needed a new sensor. Plaintiff had to crawl under the machine to trace the wires to be disconnected in order to make the repair, kneeling and leaning forward to access the area in and under the machine. While plaintiff was in this position, plaintiff felt an extremely cold, sharp pain in his lower back at the area right above the buttocks. He described the pain like being hit in the back with a hammer. Plaintiff stopped to allow the pain to subside and completed the repairs.
6. Plaintiff told a co-worker he had hurt his back working on the machine, however, he did not report the incident to his supervisor. Plaintiff failed to report the injury due to fears he might lose his job, since he was still in his probationary period of employment.
7. After arriving at home, plaintiff was in extreme discomfort and was unable to eat dinner. He lay on the floor all night in an attempt to gain relief. On the morning of February 12, 2002, plaintiff called and reported to his supervisor Gary Krause that he would be unable to work due to back pain. However, plaintiff did not discuss how he had injured his back. Next, plaintiff called Dr. Hawkins' office for a referral to an orthopedist because his back pain was so bad "it was beyond living with it."
8. Dr. Hawkins referred plaintiff to Carolina Orthopaedic Specialists, where he was seen by orthopedist Dr. John L. dePerczel. On the patient intake form, plaintiff indicated the back pain was not work-related. He did not discuss a history of the onset of pain with Dr. dePerczel. On presentation, Dr. dePerczel observed plaintiff standing with a list and exhibiting muscle spasms. Dr. dePerczel authorized plaintiff to remain out of work until February 15, 2002 and ordered an MRI.
9. Later that night, plaintiff sought treatment at Catawba Memorial Hospital emergency room, after his legs became numb. He reported a history of back pain for four months which had recently become worse. On examination, he had no reflexes in his legs. Plaintiff was not admitted but was given pain medication.
10. By February 13, 2002, plaintiff continued to have numbness in his legs, crotch and buttocks. He began having nausea and vomiting due to pain, and after becoming incontinent, a neighbor took him to Frye Regional Medical Center. An MRI was performed which revealed a massive ruptured disk with an extraordinarily large extruded fragment at L5-S1. Orthopedic spine surgeon Dr. Ralph J. Maxy examined plaintiff and diagnosed him with cauda equina syndrome secondary to a large disc herniation and extrusion in the lumbar spine for which he performed an emergency hemilaminotomy and partial discectomy. Plaintiff was discharged from the hospital on February 16, 2002.
11. Following the surgery, plaintiff's back pain resolved, but he continued to have numbness in his legs, pelvic area and buttocks.
12. Plaintiff required treatment by Douglas Eller and Dr. Les Borden of Viewmont Urology due to urinary retention secondary to the cauda equina syndrome. He has been self-cathetering to void since the surgery. In addition, plaintiff has required treatment for sexual dysfunction.
13. Plaintiff also experiences bowel dysfunction, in that he has to relieve himself twelve to fourteen times per day. However, he has not experienced bowel incontinence post-operatively.
14. Following the surgery, plaintiff's wife called defendants to report plaintiff had undergone emergency surgery and would be unable to report to work.
15. On or about February 20, 2002, personnel manager Eric Plemmons telephoned plaintiff at home in a conference call with Gary Krause and the plant manager. They informed plaintiff he was being dismissed and did not ask him about how he was injured. Plaintiff did not report the injury occurred at work, since he felt the decision to terminate him had already been made.
16. In a termination letter dated February 20, 2002, defendants wrote that plaintiff had informed his supervisor Gary Krause that he "could not report to work due to a non-occupational injury." The letter further provided plaintiff was being dismissed for failure to call in after informing employer he would be out for an extended period of time following the emergency back surgery.
17. The credible evidence in the record supports a finding plaintiff did not tell Mr. Krause he was out of work due to a non-occupational injury, or that he had injured himself playing or lifting his children.
18. Plaintiff was unable to work and was not able to leave his home until late April or early May of 2002. At that time he conferred with an attorney, who took no action on his behalf and who did not take his case.
19. After retaining his present counsel, plaintiff filed an I.C. Form 18 on May 1, 2002 to provide notice to the employer of the work-related injury. Plaintiff stated on the form that while working in an awkward position inside a machine tracing wires, plaintiff felt the onset of severe back pain. The employer filed a Form 19, which indicated notice of the injury on May 1, 2002. Defendants timely filed an I.C. Form 61 denying compensability for plaintiff's claim.
20. Plaintiff drew unemployment compensation due to his termination from defendants beginning on or about January 10, 2003 at the rate of $406.00 per week.
21. Dr. Maxy felt and the Full Commission finds as fact that plaintiff's huge ruptured disc occurred within thirty-six hours of the surgery. Further, the disc was larger and more serious than 90% or more of the similar conditions Dr. Maxy had encountered during his career as a spine surgeon.
22. The competent medical evidence in the record supports a finding that plaintiff's history of onset of back pain while he was tracing the wires on the #35 machine on February 11, 2002 was the most likely cause of the massive acute ruptured disc with extruded large fragment for which both Dr. DePerczel and Dr. Maxy rendered treatment.
23. Based upon Dr. Maxy's opinion regarding the size of the disc, the Full Commission finds as fact that plaintiff's ruptured disc and extruded fragment pathology, which Dr. Maxy found at surgery, was not the same pathology for which plaintiff sought treatment from Dr. Hawkins on January 21, 2002 or in July of 2001.
24. Plaintiff has been temporarily totally disabled from any work since February 12, 2002.
25. Plaintiff has permanent work restrictions of no lifting over fifteen to twenty pounds, occasional bending, twisting and stooping. While it is unlikely plaintiff will be capable of returning to work for defendants, he may benefit from vocational counseling to assist him in identifying work suitable to his restrictions.
26. By August 5, 2003, plaintiff reached maximum medical improvement from the surgery. However, he has not yet been evaluated for a permanent impairment rating. In addition, he continues to have numbness in the perineal area, as well as sexual, bowel and bladder dysfunctions.
27. Defendants have failed to show any prejudice based upon not receiving timely notice of plaintiff's work-related injury.
28. Plaintiff has made a reasonable effort to find work since Dr. Maxy issued the work restrictions. However, he has been unable to obtain work within his restrictions.
29. This matter was appealed to the Full Commission by defendants from an Opinion and Award awarding benefits and results in the affirmation of that award.
 *********** CONCLUSIONS OF LAW
1. Plaintiff sustained an injury as a result of a specific traumatic incident of the work assigned arising out of and in the course of the employment on February 11, 2002. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff had reasonable excuse for his failure to give timely notice as required under N.C. Gen. Stat. § 97-22, and there is no evidence defendants were prejudiced by his failure to give timely notice.
3. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $451.23 per week for the period from February 12, 2002 and continuing until he returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25. This shall include treatment by Dr. dePerczel, Dr. Maxy, Catawba Memorial Hospital, Frye Regional Medical Center, and Viewmont Urology, as well as any future treatment and evaluations ordered by these physicians. Plaintiff may also benefit from vocational counseling to assist him to return to the workforce. He is also entitled to return to Dr. Maxy for evaluation of the permanent impairment, which he may retain to his back as a result of the compensable injury.
5. Plaintiff is entitled to compensation for permanent damage to his bladder, bowel dysfunction and sexual dysfunction which are causally related to the compensable back injury. N.C. Gen. Stat. § 97-31(24).
6. Plaintiff may not receive compensation for permanent impairment since recovery under N.C. Gen. Stat. § 97-31 is in lieu of other compensation. Whitley v. Columbia Lumber Manufacturing Co., 318 N.C. 89,348 S.E.2d 336 (1986). N.C. Gen. Stat. § 97-29 provides compensation for total disability, while N.C. Gen. Stat. § 97-31 furnishes a list of specific injuries and corresponding compensations. Dishmond v.International Paper Company, 132 N.C. App. 576, 512 S.E.2d 771 (1999). This statutory scheme exists to prevent double recovery, not to dictate an exclusive remedy. Therefore, plaintiff is obligated to elect to proceed under N.C. Gen. Stat. § 97-29 or N.C. Gen. Stat. § 97-31, as he is not eligible to receive both. Gupton v. Builders Transport,320 N.C. 38, 357 S.E.2d 674 (1987).
7. Plaintiff is entitled to an attorney's fee assessed against defendants in the amount of $1,000.00 pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $451.23 per week for the period from February 12, 2002 and continuing until he returns to work or until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum. Defendants are entitled to a credit for unemployment compensation, paid to plaintiff since February 12, 2002.
2. Defendants shall pay medical expenses incurred or to be incurred as a result of the compensable injury.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. Thereafter, every fourth check shall be forwarded directly to counsel by defendants.
4. As plaintiff has not been evaluated since reaching maximum medical improvement, this Opinion does not address compensation for permanent impairment or damage to organs.
5. Defendants shall pay the costs, including a reasonable attorney's fee in the amount of $1,000.00 to plaintiff's attorney and expert witness fees in the following amounts:
a. $180.00 to Dr. Mark Hawkins,
b. $280.00 to Dr. John L. dePerczel, and
c. $300.00 to Dr. Ralph J. Maxy.
This the 1st day of April 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/mlb