***********
Having reviewed the competent evidence of record, and having the benefit of the positions of the parties, the Full Commission modifies the Opinion and Award of the deputy commissioner as further stated herein.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before Deputy Commissioner Chapman as
 STIPULATIONS
1. At the time of the contraction of the occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Toastmaster, Inc., was a self-insured employer with Corporate Claims Management as servicing agent.
In addition, the parties stipulated into evidence the following:
 1. Industrial Commission forms 18, 21, 33, and 33R contained in this file and in I.C. 868987, the duplicate file which was consolidated with the current file.
 2. A folder of indexed documents (containing discovery, ESC records, personnel records, and medical records).
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the deputy commissioner's hearing, plaintiff was thirty-nine years old and had a ninth grade education. Plaintiff took special education classes. Prior to her employment with defendant, she cleaned hotel rooms for approximately three years, inspected curtains for a year, and worked at a chicken processing plant. In October 1996 she began working for defendant as an assembler. During the first six months, her job was to pull UPC labels off a roll and place them onto boxes coming down a conveyor. Despite the quick pace, she had no problems with the job. She was then transferred to "dialing," a position which involved inserting the movement into the back of a clock, turning the clock over and then putting the hour and minute hands on the front of the clock. The production rate was one hundred twenty-five clocks per hour.
2. In 1997, plaintiff began to have problems with pain and numbness in her right hand. When the symptoms worsened in January 1998, she went to the plant nurse, who sent her to Occupational Health at Scotland Memorial Hospital. She was treated conservatively and initially restricted to light-duty work, but on February 17 the doctor allowed her to go back to regular duty. As her symptoms persisted and she was not satisfied with the medical treatment she had received, she subsequently obtained permission to see Dr. Brenner, an orthopedic surgeon.
3. On June 30, 1998, she saw Dr. Brenner's physician's assistant for complaints of right hand pain with numbness and tingling. The findings on examination indicated that she had carpal tunnel syndrome, and her right carpal tunnel was injected with medication. She was restricted to light work and her employer provided other tasks for her to do in the clock assembly process. When she returned to Dr. Brenner on July 21, 1998, she reported that the injection had helped her, as had the change in work duties. Dr. Brenner indicated that she could gradually increase her activities but that she was not to do any dialing. Plaintiff did not return to him again until September 24, 1998, but on that date she was having problems in both hands. Dr. Brenner injected her left wrist and ordered nerve conduction studies, which proved to be consistent with bilateral carpal tunnel syndrome.
4. Dr. Brenner performed surgery to release plaintiff's right carpal tunnel on October 26, 1998, and he operated on her left wrist on November 30, 1998. Plaintiff did well following the operations and Dr. Brenner subsequently released her to return to work at light-duty effective December 21, 1998. He advised that she could gradually increase her activities and return to full duty on an as-tolerated basis. Defendant provided light-duty for a period of time but then instructed plaintiff to return to her dialing position. Plaintiff's objections were disregarded and she was assigned to do the dialing job. Her hands began to hurt and swell while dialing, so on April 13, 1999, she returned to Dr. Brenner. Dr. Brenner advised her that she should avoid the dialing job on a permanent basis.
5. Defendant then put plaintiff back on the UPC label position, a job which involved placing a sticker on boxes coming down the conveyor. She was to put the sticker on one out of four boxes, a total of 1,000 boxes per day. The sticker was essential to defendant's customers, and failing to properly label boxes could result in defendant being fined. Plaintiff failed to label every box which she was supposed to label, and she was reprimanded on several occasions. She did not explain why she would miss the boxes.
6. Plaintiff testified that she also had some difficulty with her hands while performing the labeling job. Although she had residual symptoms, in view of her inability to remember certain pertinent information, it was not clear that she actually remembered having problems with the repetitive movements required by the labeler job. On May 10, 1999, Dr. Brenner gave plaintiff permanent restrictions against repetitive pushing, pulling, gripping, fingering and pinching. The greater weight of the evidence, however, fails to establish that plaintiff could not perform the UPC labeler position.
7. On May 5, 1999, plaintiff was terminated after failing to place UPC labels on boxes. She then began looking for other employment while she drew unemployment benefits. No job was offered to her. Defendant did not provide her with any vocational placement assistance at any time up to the date of hearing. Defendant's position was that it offered suitable employment which plaintiff refused by failing to perform the work adequately.
8. Defendant admitted liability for benefits under the Workers' Compensation Act for plaintiff's carpal tunnel syndrome pursuant to a Form 21 agreement which was approved by the Industrial Commission, and defendant paid compensation to plaintiff for temporary total disability while she was out of work for her surgery. Plaintiff's medical bills were also paid by the Defendant. No compensation has been paid to plaintiff since her termination in May 1999.
9. Plaintiff was terminated from her employment while performing the UPC labeler position because she failed to perform this job in accordance with her employer's guidelines. In particular, after numerous reminders, she failed to place the UPC labels on a number of boxes. Although the deputy commissioner found that this failure was not intentional and was due to plaintiff's intellectual limitations, these findings are not supported by the greater weight of the evidence. Rather, the evidence shows that plaintiff was able to perform the UPC label position satisfactorily before her injury, and there was no evidence that plaintiff sought medical attention or otherwise was not mentally or physically able to perform the UPC labeler position after her recovery from the CTS surgery. Plaintiff's failure to perform the UPC labeler position under the facts of this case constitutes a failure to accept a suitable position reasonably offered by her employer.
10. The greater weight of the evidence is that plaintiff returned to work and was physically capable of performing the UPC labeler position and that all presumption of disability ended with Plaintiff's return to this employment. The evidence fails to show that plaintiff is totally or partially disabled as a result of her injuries.
11. Plaintiff reached maximum medical improvement with respect to her bilateral carpal tunnel syndrome by May 10, 1999, and sustained a four percent permanent partial disability to each of her hands as a result of her compensable occupational disease.
12. Defendant has raised an issue regarding plaintiff's average weekly wage. Although a Form 21 agreement has been approved which shows her average weekly wage as $250.00, the agreement was subject to verification with respect to the wage. Defendant, however, did not submit a properly completed Form 22 wage chart. Rather, defendant submitted payroll records and incomplete time records. Without complete time records, plaintiff's average weekly wage cannot be properly computed. The Full Commission, therefore, finds that the greater weight of the evidence does not negate the $250.00 average weekly wage suggested by the Form 21.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Plaintiff was terminated for misconduct and she thereby constructively refused suitable employment. Seagraves v. Austin Companyof Greensboro, 123 N.C. App. 228 (1996).
2. Because the UPC labeler position was suitable position for plaintiff and because she has not presented evidence of disability as a result of her injury, plaintiff is not entitled to total or partial temporary disability benefits after her termination of employment. G.S. §§ 97-29,97-30.
3. Plaintiff has a $250.00 average weekly wage which produces a $166.67 compensation rate. G.S. § 97-2(5). Defendant is not entitled to modify the compensation rate to which the parties have previously agreed because the evidence failed to verify a different amount. G.S. §97-2(5), G.S. § 97-17.
4. Plaintiff is generally entitled to elect between receiving compensation for permanent disability for her ratings and compensation for actual wage loss according to the more munificent remedy. G.S. §§ 97-29, 97-30, 97-31; Whitley v. Columbia Lumber Manufacturing Co.,318 N.C. 89 (1986); Gupton v. Builders Transport, 320 N.C. 38 (1987). Under the facts of this case, plaintiff is not entitled to further total or partial incapacity benefits; therefore, benefits for her impairment rating yields a greater recovery. Plaintiff is entitled to receive $166.67 per week for 16 weeks based on the impairment rating of 4% to each hand.
5. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident, subject to the limitations of General Statutes section 97-25.1. G.S. §§ 97-2(19),97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay $166.67 per week for 16 weeks for the 4% impairment rating to each hand, subject to the attorney's fee hereinafter approved. These benefits have accrued and thereby shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of 25% of the net compensation awarded is approved for plaintiff's counsel. Defendants shall pay this fee in a lump sum.
5. Defendants shall pay the costs, including an expert witness fee in the amount of $120.00 to Mr. Jackson.
 S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
S/_____________________________ THOMAS J. BOLCH COMMISSIONER