***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Stanback along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter. The parties are subject to and are bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee Michael Don Lindsay and defendant-employer W.F. Mickey Body Co., Inc., on April 8, 1998, the date of the admittedly compensable injury.
3. The Employee is Michael Don Lindsay.
4. The Employer is W.F. Mickey Body Co., Inc.
 5. The Carrier is The Hartford.
6. According to the prior Opinion and Award, Employee's average weekly wage is $502.60 per week, resulting in a weekly compensation rate of $335.08.
7. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1: Medical Records, 69 pages
b. Stipulated Exhibit #2: Industrial Commission Forms, 24 pages
c. Stipulated Exhibit #3: Industrial Commission Orders, Motions, Opinions, 70 pages
d. Stipulated Exhibit #4: Letters from Hartford, 7 pages
e. Stipulated Exhibit #5: Hartford Diary, 20 pages
f. Stipulated Exhibit #6: Additional Medical Records, 36 pages
g. Stipulated Exhibit #7: Defendants' Response to Plaintiff's Reply to Defendants' Response to Motion to Set Aside or For Reconsideration of February 8, 2001 Order Directing Plaintiff to Comply with Medical Treatment, 23 pages
h. Stipulated Exhibit #8: Additional Medical Records from Dr. T. Craig Derian, 5 pages
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. In a prior Opinion and Award filed by Deputy Commissioner Douglas E. Berger on November 16, 1999, plaintiff was found to have sustained a compensable injury by accident on April 8, 1998, resulting in a disc herniation at L5-S1. The injury by accident was described as follows: "On April 8, 1998, plaintiff was performing his routine job duties as a welder for the defendant-employer when he jumped off the back of an off loader truck and landed on his feet. When he landed on his feet, he felt a sharp pain shoot up his spine and into both of his legs." The prior Opinion and Award also found that plaintiff had been terminated for cause from employment with the defendant-employer as of June 23, 1998 and that plaintiff was not entitled to temporary total disability benefits from that date up until the time of the hearing, February 23, 1999. The issue regarding permanent partial disability was reserved.
2. Subsequent to his termination from the defendant-employer, the plaintiff worked as a welder with Production Systems for approximately three months in 1999. There is no evidence in the record to suggest that the plaintiff sustained any new injuries while working for this employer, nor that he experienced an aggravation to his compensable injury while working for Production Systems. Plaintiff indicated via testimony at the hearing that he continued to have back pain while working for Production Systems and that he frequently had to call in absent due to his pain. Furthermore, there is no evidence that plaintiff sustained any type of injuries outside of the workplace subsequent to his termination from work on June 23, 1999.
3. Subsequent to the prior hearing, but prior to the closing of the record before Deputy Commissioner Berger, the plaintiff sought medical treatment on May 4, 1999 from Dr. Saul S. Schwartz, a neurosurgeon. Dr. Kandt had been treating the plaintiff for his work-related injuries, and he referred plaintiff to Dr. Schwartz. Dr. Kandt was also approved as plaintiff's treating physician per the Opinion and Award filed by Deputy Commissioner Berger.
4. The medical notes of the May 4, 1999 visit with Dr. Schwartz indicate that MRI results from December of 1998 revealed a right L4-5 large disc rupture in plaintiff's back. The notes also make reference to the same injury by accident described by the plaintiff and outlined in Deputy Commissioner Berger's Opinion and Award. No other intervening injuries are noted. Dr. Kandt referred plaintiff to Dr. Schwartz for treatment of the L4-5 disc herniation. After an examination and discussion with plaintiff, Dr. Schwartz recommended a lumbar diskectomy, and plaintiff accepted this recommendation. Plaintiff was unable to work at the time of the May 4, 1999 visit, and Dr. Schwartz removed plaintiff from work pending surgery.
5. Deputy Commissioner Berger was not inclined to allow a deposition of Dr. Schwartz during the time this matter was pending before him, and therefore, the issues regarding surgery and whether plaintiff was disabled from work during this period were not ones considered by Deputy Commissioner Berger. Defendants did not approve the surgery as recommended by Dr. Schwartz.
6. Plaintiff had a tumultuous relationship with his medical care providers. He was verbally abusive towards Dr. Schwartz, Dr. Kandt, and their medical office staff, which resulted in Dr. Schwartz and Dr. Kandt terminating the patient/doctor relationship as of October 11, 1999. Dr. Schwartz saw plaintiff in January of 2000, mostly as a "sympathy" visit because plaintiff was in so much pain. However, Dr. Schwartz once again terminated the relationship in March of 2000.
7. On May 30, 2000, plaintiff was seen by Dr. Kritzer, a neurosurgeon, for a second opinion regarding back surgery. Upon reviewing repeat MRI results, Dr. Kritzer opined that the plaintiff's left-sided pain complaints did not correlate with a right-sided disc rupture and therefore did not recommend surgery. Dr. Kritzer did not address the issues of permanent partial impairment or maximum medical improvement.
8. Defendants continue to pay for conservative medical treatment for plaintiff's compensable back injury from the date of the compensable back injury until the present and continuing.
9. The plaintiff was seen by Dr. Mark Roy, a board certified neurosurgeon, on May 21, 2001. Dr. Roy diagnosed a herniated disc at L4-5, and recommended a thoracic MRI to determine if there was any compressive pathology, because he was concerned that plaintiff's symptoms and complaints were out of proportion.
10. Through two different attorneys, plaintiff attempted to re-establish the doctor/patient relationship with Dr. Schwartz in an effort to try to have the lumbar surgery performed, but to no avail. Ms. Kathleen Sumner became the attorney of record for the plaintiff prior to the hearing before Deputy Commissioner Stanback.
11. Through the efforts of Ms. Sumner, Dr. T. Craig Derian, orthopedic surgeon, examined the plaintiff on August 15, 2002. Plaintiff remained totally disabled from working at this time. After an examination, Dr. Derian diagnosed a small HNP L4-L5 central and right. On September 9, 2002, the plaintiff returned to Dr. Derian after his MRI which revealed a posterior annular tear at L4-5 with a moderately large lumbar disc herniation at L4-5 right with lateral recess stenosis bilateral at L4-5. As of September 9, 2002, defendants filed a Form 60 and began paying temporary total disability benefits to plaintiff.
12. On September 23, 2002, defendants sent the plaintiff for another second opinion evaluation with Dr. James S. Fulghum. Dr. Fulghum agreed with the diagnosis of Dr. Derian, and suggested that a fusion might be the best initial procedure, and suggested that a discogram would confirm the pain provocation as well as the number of levels that would need to be addressed.
13. Defendants finally approved the surgery, and on October 22, 2002, Dr. Derian performed an excision of HNP with decompression at L4-5. Plaintiff was discharged on October 23, 2002. The surgery went very well.
14. On October 28, 2002, Dr. Derian called plaintiff regarding his post-operative behavior of leaving hostile messages on Dr. Derian's office answering service. Dr. Derian attributed plaintiff's behavioral disturbances to a moderate cortical atrophy, otherwise known as brain atrophy. Plaintiff was very inpatient with Dr. Derian's office staff and would scream and curse on the answering service when leaving a message, but would be reassured and calm when speaking with a live person.
15. Throughout his medical treatment plaintiff has exhibited very specific patterns of responding with anger and agitation when he is delayed or feels he is being slighted; however the plaintiff will accept reassurance. Dr. Derian indicated that the plaintiff may turn out to be volatile, and that plaintiff may interfere with his own medical care by using inappropriate or aggressive responses. Evidence exists for Dr. Derian's opinion, as plaintiff has hired and fired several attorneys, and has been released by medical care providers, not because he had reached maximum medical improvement, but because they no longer wanted to treat him. The plaintiff also left threatening messages with his former attorney, Robert Davidson, to which Mr. Davidson felt local police intervention might be necessary if the threats continued. The plaintiff also threatened to blow up his current attorney's law office, to which she responded with a petition for involuntary commitment, which was subsequently denied. Finally, the plaintiff also left messages on the answering service of Deputy Commissioner Stanback that were not of a threatening nature, but he was obviously agitated and wanted his current attorney to withdraw from his case. At one point, the plaintiff did contact Deputy Commissioner Stanback directly, inquiring why Deputy Commissioner Stanback had not released his attorney from the case. After explaining to plaintiff the rules regarding ex parte communications, Deputy Commissioner Stanback explained that his attorney would not be released until the rendering of this Opinion and Award. Deputy Commissioner Stanback then sent electronic mail messages to both counsel explaining the nature of the conversation that had just occurred. The plaintiff remained calm during the conversation and did not threaten Deputy Commissioner Stanback.
16. On November 4, 2002, Dr. Derian examined the plaintiff and noted he was healing well at the surgical site, and plaintiff's symptoms had improved. On January 6, 2003, Dr. Derian again examined the plaintiff and diagnosed behavioral disturbance related to diffuse cerebral atrophy, status post lumbar decompression L4-5, and left posterior cervical symptoms, nonspecific. Dr. Derian suggested the plaintiff contact a local physician if there is worsening of his cervical symptoms.
17. On February 10, 2003, Dr. Derian released the plaintiff for long-term medical management of his pain with an appropriate local facility capable of treating him. The long term care should include a psychiatric/psychological component to address plaintiff's brain atrophy and behavioral disturbances. Even though plaintiff's brain atrophy is not directly related to his work injury, the medical treatment for the same is necessary to effect a cure and/or provide relief of his back pain, because without psychiatric and/or psychological intervention, plaintiff is incapable of consistently receiving the medical care needed to treat his back condition. As of February 10, 2003, Dr. Derian opined that the plaintiff was at maximum medical improvement as to his back from his surgery and assigned a twenty percent (20%) permanent partial impairment rating to his back.
18. Dr. Derian further explained why plaintiff's pain complaints may not have coincided with the MRI results in that a disc has inflammatory components that release various chemical irritants. These irritants cause variations in symptoms, including variations in what side of the body experiences pain. The surgical procedure performed by Dr. Derian greatly improved plaintiff's symptoms; however, the plaintiff is at greater risk for persistent low extremity pain due to the number of years he has experienced pain, and due to the lapse of time between when the surgery was recommended in May, 1999 until it was finally approved and performed in October, 2002. Dr. Schwartz opined that plaintiff should have been able to return to work after a reasonable period of time, with some initial restrictions, had the surgery been performed at or near the time it was recommended.
19. Dr. Derian assigned plaintiff a twenty percent (20%) permanent partial disability rating to his back as a result of his compensable injury by accident of April 8, 1998 and the resultant pain and surgery. Even though Dr. Derian found plaintiff to be at maximum medical improvement from a surgical standpoint, he did not release plaintiff to return to work, and he further recommended additional long-term medical management of plaintiff's back condition, including a psychiatric evaluation.
20. From May 4, 1999 up until the present and continuing, plaintiff has remained totally disabled from earning wages in any employment. The defendants have offered no evidence that plaintiff was capable of working during this period of time, or that a job was made available to him that he did not accept. During the hearing of this matter, plaintiff frequently grimaced, sighed heavily and constantly squirmed in his seat, and sat sideways in his chair for the majority of the hearing. Even though Dr. Schwartz testified in his deposition that he could only verify plaintiff's May 4, 1999 out-of-work note through March or April of 2000, the defendants are estopped from arguing that the plaintiff was no longer disabled after this period due to their own stubborn, unfounded behavior. The approved treating physician, Dr. Kandt, made a referral to Dr. Schwartz, who recommended surgery. Dr. Schwartz' original out-of-work note indicated that plaintiff needed to stay of out work until he had surgery; the defendants refused to authorize and approve the surgery when recommended and continued this refusal until the surgery was performed in October of 2002. Plaintiff remained out of work during this period because of his back pain and remains incapable of earning wages at this time without further medical treatment, including psychiatric evaluation and treatment and vocational rehabilitation.
21. The plaintiff's former counsel, Robert Davidson, withdrew while this action was pending before Deputy Commissioner Berger on September 2, 1999. Deputy Commissioner Berger awarded Mr. Davidson a twenty-five percent (25%) attorney fee for any permanent partial disability rating plaintiff receives. At this time, plaintiff has not elected to pursue payment of his permanent partial disability rating; however, Deputy Commissioner Berger's prior Order remains in effect. As the Industrial Commission has no jurisdiction to settle attorney fee disputes, the Commission makes no attempt to determine the amount of attorney's fees to be divided between plaintiff's prior attorneys and plaintiff's current counsel.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff sustained a compensable injury by accident to his back on April 8, 1998, that arose out of and in the course of his employment with defendant-employer. As a result of said injury by accident, plaintiff sustained a right to central herniated disc at L4-5. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident of April 8, 1998, the plaintiff has been totally disabled since May 4, 1999, the initial date of the plaintiff's medical visit with Dr. Schwartz, and plaintiff remained disabled up until the time defendants voluntarily began paying temporary total disability benefits effective September 9, 2002. The plaintiff is therefore entitled to accrued temporary total disability compensation at the rate of $335.08, from May 4, 1999, through September 8, 2002. N.C. Gen. Stat. § 97-29.
3. Pursuant to Gupton v. Builders Transport, 320 N.C. 38,357 S.E.2d 674 (1987) and Whitley v. Columbia Lumber Mfg. Co.,318 N.C. 89, 348 S.E.2d 336 (1986), the plaintiff must make an election as to whether he will continue to receive continuing benefits under N.C. Gen. Stat. § 97-29 or would prefer to receive benefits for his disability rating under N.C. Gen. Stat. § 97-31.
4. The plaintiff can elect to receive temporary total disability benefits from September 9, 2002 until the time of the rendering of this Opinion and Award, plaintiff remained and remains incapable of earning wages and is totally disabled. Plaintiff is therefore entitled to temporary total disability compensation at the rate of $335.08, payable each week from September 9, 2002 until the plaintiff returns to work or until further Order of the Industrial Commission. The defendants are entitled to a credit for the benefits having been paid during this period. N.C. Gen. Stat. §§ 97-29; 97-42.
5. Alternatively, the plaintiff can elect to receive a twenty percent (20%) permanent partial disability of his back. N.C. Gen. Stat. § 97-31.
6. If the plaintiff elects to receive benefits pursuant to N.C. Gen. Stat. § 97-29, the defendants shall provide vocational rehabilitative services, with the plaintiff's psychological condition and treatment considered by the vocational program. N.C. Gen. Stat. § 97-25.
7. The plaintiff is at maximum medical improvement from an orthopaedic/surgical standpoint resulting from his back surgery on October 22, 2002; however, the plaintiff has not returned to work in any capacity and continues to experience chronic pain for which Dr. Derian has recommended long-term medical treatment in association with psychiatric evaluation and treatment. Said treatment is necessary to effect a cure, provide relief and/or lessen the period of plaintiff's disability, and the plaintiff is entitled to the same, the expenses of which are payable by the defendants. Dr. Derian shall be the plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
8. The plaintiff is entitled to have defendants provide all medical compensation arising from his compensable back injury and resulting chronic pain. This includes all related treatment provided by Dr. T. Craig Derian and any other medical providers, that is reasonably necessary to effect a cure, provide relief and/or lessen the period of disability, including long-term medical management of plaintiff's pain, incorporating psychiatric evaluation and treatment. N.C. Gen. Stat. § 97-25.
9. No vocational rehabilitation efforts shall commence until such time that plaintiff has undergone a psychiatric evaluation and has been cleared by a psychiatrist to participate in vocational rehabilitation. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to attorney's fees awarded herein, defendants shall pay to plaintiff accrued temporary total disability compensation at the rate of $335.08 per week from May 4, 1999, through September 8, 2002. Said amount shall be paid in one lump sum, minus the approved attorney's fee.
2. If plaintiff selects to receive benefits under N.C. Gen. Stat. § 97-29, defendants shall pay to plaintiff temporary total disability compensation, at the rate of $335.08 per week, from September 9, 2002, and continuing until such time as plaintiff returns to work or until further Order of the Industrial Commission. The compensation payable through the date of this Opinion and Award is subject to an attorney's fee approved herein. Defendants shall receive a credit for all compensation paid by them pursuant to the Form 60.
3. If plaintiff selects to receive benefits under N.C. Gen. Stat. § 97-31, plaintiff is entitled to receive 60 weeks of benefits at the rate of $335.08 per week. As these benefits have accrued, this amount would be payable in a lump sum.
4. Defendants shall provide payment of medical expenses incurred by the plaintiff and to be incurred by the plaintiff for all medical treatment that is necessary to effect a cure, provide relief of his symptoms, and/or lessen his period of disability, including medical treatment provided by Dr. T. Craig Derian.
5. Defendants shall provide to plaintiff long-term medical management, for plaintiff's chronic back pain and back condition, through providers in plaintiff's locale, including a psychiatric evaluation and psychiatric treatment.
6. If the plaintiff elects to receive benefits pursuant to N.C. Gen. Stat. § 97-29, the defendants shall provide vocational rehabilitative services, with the plaintiff's psychological condition and treatment considered by the vocational program.
7. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff in Paragraph 1 of this AWARD and the compensation due plaintiff is hereby approved for plaintiff's counsel(s). From the date of the Opinion and Award forward, the plaintiff's ongoing benefits, should he elect to receive them, plaintiff's counsel(s) shall receive an attorney's fee in the amount of every fourth check.
8. Defendants shall provide vocational rehabilitation assistance to the plaintiff, upon his release from an approved, authorized treating physician to participate in the same. Said release shall be from both a physical and psychiatric/psychological standpoint. The defendants shall refrain from any vocational rehabilitation efforts until such time that plaintiff has undergone a psychiatric evaluation and some level of treatment if deemed necessary by his treating psychiatric physician.
9. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER