***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** RULINGS ON EVIDENTIARY MATTERS
At the hearing before the Full Commission, plaintiff made a motion to admit additional medical records. Defendants filed a response to plaintiff's motion and a motion to strike. As plaintiff's additional evidence is not "newly discovered evidence" within the meaning of Rule 60(b) of the North Carolina Rules of Civil Procedure and would prejudice defendants if made part of the record, plaintiff's motion to admit additional medical records is hereby DENIED.
In addition, transcript exhibit pages 44 through 55 were inadvertently left out of the record and are hereby admitted into evidence.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties on January 6, 2003.
3. American Home Assurance Co., Inc., is the carrier on the risk and AIG Claims Services is the adjusting agent.
4. Plaintiff's average weekly wage is $377.02, yielding a weekly compensation rate of $251.36.
5. On January 6, 2003, plaintiff sustained a low back injury by accident arising out of and in the course of his employment with defendant-employer. Defendants have paid plaintiff total disability benefits at a rate of $251.36 per week from January 20, 2003 through the present.
6. Plaintiff last worked for defendant-employer on January 10, 2003.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the Deputy Commissioner's hearing, plaintiff was 57 years of age and resided in Surry County with his wife. He graduated high school in 1966 and has no other formal education. Plaintiff's training is limited to on-the-job training he received over the years.
2. Plaintiff has a long work history beginning in 1966 with physical labor, including work in textile mills. From 1966 through January 10, 2003, plaintiff worked for defendant-employer on three separate occasions, for a total of approximately 23 years. Plaintiff worked as a knitting machine mechanic, which would be characterized as medium to heavy duty work, and involved the constant use of his hands, frequent bending at the waist, twisting back motions, and occasional lifting of machine parts weighing up to approximately 75 pounds.
3. On Monday, January 6, 2003, plaintiff was sitting on a stool repairing one of the knitting machines when his pliers fell out of his pocket and onto the floor. As plaintiff leaned over to pick up the pliers, he suffered the onset of low back pain, followed by radiating pain into his right leg and right testicle.
4. Plaintiff sustained a compensable injury by accident to his back on January 6, 2003. Defendants accepted his claim as compensable and paid plaintiff temporary total disability benefits for the time he missed from work. Defendants did not file a Form 60 until March 29, 2004, nine days before the Deputy Commissioner's hearing. Although defendants failed to file a Form 60 in a timely manner, plaintiff was not prejudiced and there is no evidence that he failed to receive his compensation in a timely fashion.
5. On January 8, 2003, plaintiff received initial medical treatment from his family practitioner, Dr. Randall Keith. Dr. Keith noted a decreased range of motion and mild tenderness in plaintiff's right lumbar region, provided him with prescription medication, and at that time, permitted him to return to work.
6. Plaintiff returned to work on January 9 and 10, 2003. On January 11, 2003, however, plaintiff was unable to continue to perform his duties due to pain. Plaintiff has not worked since January 11, 2003 and has received temporary total disability benefits since that time.
7. On January 13, 2003, Dr. Keith ordered a lumbar MRI and prescribed Vicodin for plaintiff's pain. The lumbar MRI revealed bulging discs, bilateral facet overgrowth and spinal stenosis at the L2-3, L3-4 and L4-5 levels of plaintiff's spine. At the L4-5 level, an annular fissure was identified and the L5-S1 disc was noted to be completely degenerated with a mild mass effect on the thecal sac.
8. Based on plaintiff's MRI results, Dr. Keith diagnosed plaintiff with "back pain" and declined to recommend surgical intervention. Instead, Dr. Keith recommended plaintiff participate in a course of physical therapy treatment, which was authorized by defendants. On March 14, 2003, after attending eleven therapy sessions, plaintiff was discharged from the program with mild symptomatic improvement. Dr. Keith referred plaintiff to a neurosurgical specialist for further evaluation.
9. On April 22, 2003, plaintiff was seen by neurosurgeon Dr. J.M. McWhorter of Carolina Neurosurgical Associates. Dr. McWhorter advised plaintiff to increase his physical activities and did not recommend surgical intervention. On June 5, 2003, plaintiff returned to Dr. McWhorter's office with no change in his condition. Dr. McWhorter noted that plaintiff's neurological examination was completely within normal limits and released him to the care of his family physician, Dr. Keith.
10. Defendants arranged for plaintiff to be evaluated for a second opinion by Frank L. Cuce, D.O. Dr. Cuce recommended plaintiff first have a functional capacity evaluation (FCE) by a physical therapist. Defendants arranged for Doug Coe at Northern Hospital of Surry County Rehabilitation to perform the FCE on August 7, 2003.
11. During the August 7, 2003 FCE, Mr. Coe noted plaintiff's self-limiting behavior. Overall, the FCE tended to show that due to his low back pain, plaintiff was limited to very short periods of time he could sit, stand or walk. The FCE also showed that plaintiff was able to frequently lift 23 pounds from knuckle to shoulder level, which qualified him for the medium physical work demand level, which is 20 to 25 pounds of force frequently. Mr. Coe assessed plaintiff as capable of returning to work in a medium capacity position with restrictions of occasional carrying, pushing, pulling, sitting, standing, walking, stair climbing, reaching, and fingering; occasional to frequent lifting; and no stooping, kneeling, crouching, crawling or ladder climbing. With respect to plaintiff's work restrictions of sitting, standing and walking, Mr. Coe gave significant restrictions, in that plaintiff could only sit for 18 minutes, stand for 3 minutes, and walk for 3 minutes before changing positions.
12. On August 12, 2003, Dr. Cuce examined plaintiff and reviewed the FCE results. Dr. Cuce interpreted plaintiff's lumbar MRI to reveal generalized degenerative disc disease with spinal stenosis at multiple levels, as well as an annular fissure at L4-5. Dr. Cuce assessed plaintiff with chronic low back pain secondary to work injury, degenerative lumbar disc disease with spondylosis, and asymmetric reflexes, lower extremities. He believed plaintiff might receive some pain relief from epidural injections, although it would not change plaintiff's work capacities. Dr. Cuce did not recommend back surgery and assessed plaintiff with a 10 percent permanent impairment to his back. As of August 12, 2003, Dr. Cuce told plaintiff he could work a medium duty job for an eight hour workday with no sustained bending, no repetitive bending or stooping, no sustained squatting or crouching, no repetitive squatting, no crawling, no kneeling, no ladder climbing and no frequent floor to knuckle lifting, carrying, sitting, standing, walking, or stair climbing.
13. Following plaintiff's release to return to work, defendant-employer offered plaintiff a job. Dr. Cuce later reviewed the job description and noted that certain aspects of the position would need modification. Since the job could not be permanently modified, defendant-employer was unable to accommodate plaintiff's restrictions. Defendant-employer has not been able to offer plaintiff employment within his permanent restrictions.
14. On November 21, 2003, plaintiff sought treatment from Dr. Nancy Faller of Piedmont Anesthesia and Pain Consultants. Defendants did not authorize the treatment. Dr. Faller recommended that plaintiff undergo a series of facet injections to reduce his pain symptoms. At that time, plaintiff refused to comply with the recommended medical treatment, although he testified before the Deputy Commissioner that he had reconsidered and was willing to undergo such injections.
15. On November 21, 2003, plaintiff filed a motion with the Commission seeking an order allowing "the pain specialists at Piedmont Anesthesia Pain Consultants" to assume his care. Dr. Faller was not specifically mentioned by name nor requested by plaintiff. Special Deputy Commissioner Chrystina F. Kesler denied plaintiff's motion on January 14, 2004. The Deputy Commissioner's hearing on April 6, 2004 was scheduled as an appeal from the administrative order.
16. Following his appointment with Dr. Faller, plaintiff did not seek any additional back-related medical treatment prior to April 6, 2004. At the Deputy Commissioner's hearing, however, plaintiff noted that he was experiencing ongoing symptoms and that he wanted additional treatment, including the previously recommended treatment with Dr. Faller.
17. Vocational expert Stephen Carpenter was retained to evaluate plaintiff's vocational status and opportunities for employment. Mr. Carpenter reviewed job availability for plaintiff based upon the records at the Employment Security Commission, but did not conduct a job search. Mr. Carpenter testified that that there were sedentary and light duty jobs available in the Surry County area, but that plaintiff was not employable due to his restrictions of less than sedentary work. Mr. Carpenter stated that if plaintiff's ongoing medical treatment assisted him and plaintiff's condition improved, further vocational assessment would be warranted. However, Mr. Carpenter did not meet or speak with plaintiff and admitted that he was not familiar with the area where plaintiff resides. As a result, the Full Commission gives little weight to Mr. Carpenter opinion that plaintiff is permanently and totally disabled.
18. Defendants sought additional vocational rehabilitation activities though Kenneth A. James, a vocational counselor. However, due to plaintiff's request for additional medical treatment, vocational rehabilitation was placed on hold and remained on hold at the time the record before the Deputy Commissioner was closed.
19. In light of plaintiff's request for additional treatment, defendants reinitiated case management activities with Concentra Case Management and nurse case manager Sheryl Long. On July 19, 2004, both plaintiff and Ms. Long attended plaintiff's appointment with Dr. Cuce to discuss the possibility of pain management treatment as requested by plaintiff. Dr. Cuce observed no change in plaintiff's pain symptoms and pursuant to plaintiff's desire for further treatment, referred him to pain specialist Dr. Novembre. In addition, Dr. Cuce noted that while plaintiff would probably remain in the medium category for permanent work restrictions, his specific time restrictions for positional changes could be altered through further treatment and vocational training. Dr. Cuce also noted that plaintiff continues to be capable of work with frequent repositioning.
20. Plaintiff refused to see Dr. Novembre, insisting that he be permitted to return to Dr. Faller, the physician from whom he previously refused medical treatment recommendations. Defendants agreed to send plaintiff to Dr. Faller, but because she was unable to see him until October 2004, Ms. Long scheduled plaintiff to see Dr. Stuart Meloy, a partner of Dr. Faller, on August 2, 2004. Plaintiff again refused this treatment, and in response, defendants filed a motion to compel. Plaintiff's repeated refusal of pain management treatment is unjustified.
21. As of the Deputy Commissioner's hearing, plaintiff continued to undergo active medical treatment and was scheduled to begin a pain management program. Although plaintiff has been rated and has been assigned permanent restrictions, medical testimony indicates that plaintiff's pain level and pain management might improve with ongoing medical treatment. In light of the ongoing treatment and potential improvement, as well as the fact that vocational rehabilitation has not yet been attempted due to continuing medical treatment, the Full Commission finds that this case is not ripe for a determination of permanent and total disability.
22. None of plaintiff's physicians have indicated that he should not return to work in any capacity. Dr. Cuce, whose reports are considered to be credible and competent, has indicated that plaintiff can work with restrictions. It appears that the primary limiting factor is plaintiff's level of pain, which may improve with the ongoing treatment.
23. Given plaintiff's level of pain and considering the permanent restrictions imposed by Dr. Cuce, it appears unlikely that plaintiff will be able to return to work earning the same wages as prior to his injury by accident. However, the evidence of record fails to show that there is no reasonable possibility that plaintiff may return to work in the future, following further medical and vocational treatment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 6, 2003, plaintiff sustained an admittedly compensable injury by accident, resulting in aggravation of his low back condition. N.C. Gen. Stat. § 97-2(6).
2. As a consequence of his injury by accident and resulting back pain, plaintiff has been unable to earn wages in the same or any other employment and therefore is entitled to receive total disability compensation at the rate of $251.35 per week beginning January 11, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. §97-29.
3. Plaintiff is entitled to payment by defendants of all reasonably necessary medical expenses incurred by plaintiff for treatment of his injuries, so long as said treatment effects a cure, gives relief, or tends to lessen plaintiff's period of disability, including physical therapy, and possible further treatment for back pain, including steroid injections and pain management. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. A conclusion that plaintiff is permanently and totally disabled requires a finding that plaintiff's earning ability has been permanently abrogated as a result of his injury by accident. Whitley v. ColumbiaLumber Mfg. Co., 318 N.C. 89, 348 S.E.2d 336 (1986). If there exists suitable employment which plaintiff is capable of obtaining, considering his physical and vocational limitations, plaintiff's earning ability has not been permanently abrogated. Kennedy v. Duke Univ. Med. Ctr.,101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). The competent and credible evidence of record fails to establish at this time that plaintiff's ability to earn wages has been completely obliterated as a result his injury by accident. A finding of permanent and total disability is therefore premature at this time.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for total disability at the rate of $251.36 per week beginning January 11, 2003 and continuing until further Order of the Commission.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability. The Commission approves Dr. Nancy Faller, or if she is unavailable Dr. Stuart Meloy, of Piedmont Anesthesia Pain Care and primary care physician Dr. Randall Keith of Holly Springs Family Practice to provide pain management care for plaintiff's low back pain condition. Plaintiff shall cooperate with reasonable medical treatment and reasonable vocational rehabilitation as may be offered by defendants.
3. A reasonable attorney's fee of 25% of the compensation awarded plaintiff in paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, including reimbursement to plaintiff for fees charged by Stephen Carpenter.
This 21st day of October 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER